## LITTLE ROCK *v.* GALLOWAY.

### Opinion delivered February 11, 1924.

1. ADVERSE POSSESSION—POSSESSION OF ALLEY.—Adverse possession
   of an alley in a city by the owner and his grantors for more
   that the statutory period prior to Acts 1885, p. 92, barred the
   city and public from asserting any right to open up and use it
   without condemnation, even if there was an original dedication.

2. MUNICIPAL CORPORATIONS—PRESCRIPTIVE RIGHT TO ALLEY.—Evi-
   dence *held* insufficient to show that the city acquired a right to
   an alley by prescription.

Appeal from Pulaski Chancery Court; *John E.
Martineau,* Chancellor; affirmed.

*A. B. Cypert,* for appellant.

A street or alley is not abandoned by delaying the
opening of it, after acceptance and dedication. 88 Ark.
533. The fact that the owners inclosed and obstructed
the property did not show adverse possession. 58 Ark.
142.

*Rose, Hemingway, Cantrell & Loughborough,* for
appellee.

Testimony that the owners were in possession and
claimed title to the full 150-foot lot and expressly denied
that there was an alley in the block was admissible and
sufficient as showing boundaries and extended posses-
sions. 77 Ark. 309; 101 Ark. 409. Property dedicated
to public use may be accepted by the representatives of
the public or by use by the public. 127 Ark. 364. The
owners did not open the public alley, and the public
acquired no right in the private way. 47 Ark. 431; 50
Ark. 53; 51 Ark. 270; 58 Ark. 494; 62 Ark. 415; 146 Ark.
300. Where there is a doubt as to the character of the
use, the implication that it was adverse cannot be made.

59 Ark. 41; 105 Me. 529; 75 Atl. 51; 111 S. W. 977; 152 Ill. 561; 38 N. E. 768; 39 N. E. 1024; 72 Wash. 99; 129 Pac. 884; 54 N. E. 850; 2 Metcalf (Ky.) 98; 74 Am. Dec. 400; 169 N. W. 263; 101 Ind. 509; 11 N. E. 484; 241 Ill. 566; 89 N. E. 653.

McCULLOCH, C. J.  Appellee, D. F. S. Galloway, is, and for many years has been, the owner of certain lots, all in the same block, in the city of Little Rock, and he instituted this action in the chancery court of Pulaski County against the city of Little Rock, alleging that there is a private alley through the middle of said block, that the alley is not public, and has never been dedicated to public use, but that the city claims that the alley is public, and asserts the right to throw it open for public use.  The city answered, denying that the alley through the block in question is private, and alleging that, on the contrary, the alley in question was dedicated to the public by being shown on the recorded plat and lots sold with reference to the plat, and also that the public had obtained the prescriptive right to use the alley by reason of long and continued usage for more than the statutory period of limitation.  The city therefore insisted on its asserted right to keep the alley open to the public.  On the trial of the cause there was a decree in favor of appellee, and the city has appealed.

The lots owned by appellee are situated in block 7, according to the plat of the city of Little Rock, and the block is bounded on the west by Main Street, on the east by Scott, on the north by Sixth, and on the south by Seventh.  Appellee owns the east half of the block, being six lots, numbered 7 to 12, inclusive, fronting on Scott Street, and lots 1 and 2, fronting on Main Street.  These lots are next to Sixth Street, and the next two lots, which are numbered 3 and 4, are owned by the Fulk estate.  George W. Donaghey owns the other two lots facing on Main Street, numbered 5 and 6.  All of the lots fronting on Main Street are built up with business buildings, and there is a business building fronting south on Seventh Street, on the lot owned by appellee at the

corner of Seventh and Scott. The other portions of the lots owned by appellee, fronting on Scott Street, have been built up as residence property. There is now an alleyway running north and south through the center of the block, and the controversy in the case is whether or not this is a public or private alley.

It is the contention of the city that the alleyway along the route in question was dedicated to the public use by the filing of a plat in the early days of the city, showing an alley at that place, and by a ratification of the plat under a covenant executed by plaintiff's remote grantor, Roswell Beebe. The contention is that Beebe, by his covenant, executed at the time he received a patent from the United States, ratified the original dedication, and is bound by it under the law announced by this court in the case of *Beebe* v. *Little Rock,* 68 Ark. 39.

It is the contention of appellee, however, that there was no dedication by appellee's predecessors in title, for the reason that block 7 was not within the boundaries described in Beebe's covenant, and that the facts of this case do not fall within the decision in the case cited above. It is also contended by appellee that, even if there had been a formal dedication, the right of the city and of the public to use the alley has been barred by actual adverse possession for more than the statutory period of limitations.

We deem it unnecessary to discuss the question of original dedication, for it appears very clearly from the testimony, which is practically undisputed, that appellee and the other owners of lots in block 7 have obtained title to the alley in question by adverse possession of their respective grantors for more than seven years, and that the city and the public in general are barred by the statute of limitations from asserting the right to open up and use the alley.

Under the statute now in force, limitations do not run against the right of a city to open up a street or alley acquired by dedication or prescription. Crawford & Moses' Digest, § 7570. The first statute exempting

cities from the statute of limitation as to streets and
other public places applied only to cities of the first
class, and was approved March 21, 1885. Acts 1885,
p. 92. The enactment of the statute was doubtless
prompted by the decision of this court in *Fort Smith
v. McKibbin,* 41 Ark. 35, where it was decided that
a city of the first class was barred by adverse pos-
session for the period of limitations from opening streets
and alleys. That statute, however, acted prospectively,
and did not affect the title completely acquired by
adverse possession before the enactment of the statute.
The evidence in the case shows that there was an actual
adverse occupancy by appellee's predecessors in the title
for more than seven years prior to the statute referred
to above.

Appellee deraigns a clear title to his lots in block 7
to a patent issued by the United States to Roswell Beebe,
on September 25, 1839. There were numerous witnesses
introduced, whose testimony showed the condition of the
property for a great many years prior to the enactment
of the statute referred to above—one of the witnesses
was conversant with its condition as far back as the
year 1865. In those days the two lots now known as the
Donaghey lots were owned by Mrs. Schader, and the
two lots fronting on Main Street, in the west half of
block 7, were owned by W. B. Wait. Mrs. Schader's
dwelling-house was situated on the two lots owned by her,
and she resided there. Her son, C. H. Schader, testified
that his recollection ran back to 1865, when he was a
small boy, and lived at the place with his mother. All
of the lots in the block were 150 feet deep, and there was
no alley between them. There was a fence built entirely
through the block on the line between the lots facing on
Main Street and those facing on Scott Street, which was
along the center of the alley as it now exists. Mr.
Schader testified that the fence was an old one at the
time he first remembered it, in the year 1865, and was
built solid of boards. Appellee's ancestor, Miss Eliza-
beth Shall, who devised the property to appellee, built a

residence on the lots fronting on Scott Street, about the year 1878, and occupied it until she died. There was another small building on the lot at the corner of Seventh and Scott Streets, which was rented to tenants by the owner; and there was another building on the Shall property, facing on Seventh Street, which was situated within a few inches of the division fence, and occupied a part of what is now the alley. The lots facing on Scott Street were fenced all round. Mrs. Schader also had a small building on the back part of her lot, near the division fence, and there were trees of considerable size along the division fence, in the center of what is now the alley. There was a lumber-yard on the Shall property, at the northeast corner, and this was also fenced in. The other lots facing on Main Street were covered by cheap business buildings. This condition existed until the year 1903, when Judge F. M. Fulk, who had purchased from W. B. Wait the two lots in the middle of the west half of the block, erected a building, which was known as the Jones House Furnishing Building, and which was the full width of the two lots and 140 feet deep. This left a space of ten feet between the rear end of the Fulk building and the center of the alley. There was no alley there at the time, and the occupant of that building secured a written agreement from Miss Shall, the then owner of the other property, permitting the private use of the space from the alley of the building out to the street. Mr. Claudius Jones, the president of the Jones House Furnishing Company, testified that there was a written agreement permitting him to use the space as ingress and egress for private purposes, and that it expressly stipulated that it was not to be used by any one else. Conspicuous signs were put up at the entrance of the way, showing that it was a private alley, and a portion of the time the space was closed by a gate and was not used by the public at all. In the year 1906 Mr. Donaghey bought the two Schader lots and erected a business building thereon, the full width of the two

lots and 140 feet deep, leaving a space of ten feet for an alley, the same as was done in regard to the Fulk property. At that time the old building on the rear of the Shall lot, facing on Seventh Street, was still standing, and Mr. Donaghey testified that it appeared to have been there thirty-five or forty years. This is the building that extended over to the fence, as before stated.

In the year 1908 Miss Shall caused to be erected a business building, fronting on Seventh Street, on the rear of her lots in the east half of the block, at the location of the old building referred to, which was then torn down. These buildings left a space of ten feet for an alley, which made the space between that building and the Donaghey building twenty feet. There was then a building owned by Miss Shall on lots 1 and 2, which ran back 140 feet, and left a space of ten feet. The alley was thus thrown open for private use entirely through the block, and it was not of a uniform width of twenty feet, for the reason that a brick stable on Miss Shall's home lot extended a part of the way out into the alley. All the witnesses testified that the alley was a private one, and that at each entrance there was continuously maintained a conspicuous sign showing that it was a private alley. The testimony is undisputed that these signs were maintained, that the alley was not used by any one except occupants of the buildings, and that it was not used at all for any public purpose, such as the laying of water mains.

All of this evidence establishes indisputably that the *locus in quo* was adversely occupied by the owners for more than seven years prior to the enactment of the statute exempting the city from the operation of the statute of limitations. Even if there had been a prior dedication, the adverse occupancy constituted a complete investiture of title under the statute of limitations. The statute enacted in 1885, *supra,* did not and could not operate as a divestiture of the title thus acquired. This evidence also establishes the fact that the public acquired no prescriptive right after the fence was torn away and

the alley opened, about 1903. It was opened as a private way and maintained solely as such, with conspicuous notices to the public that it was not a public alley, that it was only a private way. The undisputed evidence is that the city never attempted, during all the intervening years, to exercise any authority over the alley. The city engineers whose terms of office covered the period in question testified that there were no records in the engineer's office showing that it was a public alley, and witnesses testified that there was never any permission applied for at the engineer's office, when excavation was done in the alley, for any purpose. If there was ever any use of the alley at all by the public, it was of a fitful nature, and was clearly permissive, and was not sufficient to amount to a prescriptive right. *Howard* v. *State,* 47 Ark. 431; *Jones* v. *Phillips,* 59 Ark. 35. The city has the power, of course, to open the alley at any time, as a public way, by proper condemnation proceedings, but it has not seen fit to do so, and the alley is not a public one now.

The decree of the chancellor was therefore correct, and the same is affirmed.