CITY OF MAGNOLIA *v.* BURTON.

4-8457                                         209 S. W. 2nd 684

Opinion delivered March 22, 1948.

Rehearing denied April 19, 1948.

*Henry B. Whitley,* for appellant.

*Keith & Clegg,* for appellee.

SMITH, J. Appellee, plaintiff below, filed this suit in which he alleged ownership of a strip of land de-

scribed as follows: Commencing at the SE corner of the SE¼ of the SW¼ section 12, Twp. 17 S., Rge. 21 W. and running north 40 feet, thence west 245 feet along the south line of lots 1 and 2 of the Northeastern Addition to the Town of Magnolia, thence south 40 feet to the south line of said section 12, thence east 245 feet along said south line of said section 12 to the point of beginning.

Appellee alleged that without authority, and without instituting condemnation proceedings, the City of Magnolia had entered upon the land for the purpose of constructing or continuing a street through it. He prayed that the City be enjoined from disturbing his possession or in the alternative, that he have judgment for the value of the land taken. He recovered a judgment for $800, from which is this appeal.

The title to lots 1 and 2 is not involved. The land involved is a strip in the shape of a parallelogram south of these lots, extending 40 feet north and south, and 245 feet east and west. Lots 1 and 2, according to a plat of the City herein later referred to, front Union Street, which runs east and west in that City, and the disputed strip extends into Union Street.

The plaintiff undertook to deraign a record title to the land, but failed to do so. The court held however, that while plaintiff had not shown ownership of the record title, he had proved ownership by adverse possession. There was offered in evidence a plat of the City of Magnolia, the authenticity and verity of which is questioned, but it was shown that for a period of many years the lots in the City have been described in deeds conveying them with reference to this plat. In attempting to deraign his title, appellee employed descriptions conforming to this map.

No dedication of the streets within the platted area was shown, and the plat was not placed of record until 1923, but conveyances of the blocks and lots comprising the now prosperous City of Magnolia, since the City was a hamlet, were made with reference to it. We therefore hold, upon the authority of the case of *Porter* v. *City of*

*Stuttgart,* 135 Ark. 48, 204 S. W. 607, that there had been a dedication of the streets as shown on the plat.

This disputed area was therefore over a part of one of the streets in the City. By Act 24 of the extra session of 1897, now appearing as amended, as § 9646, Pope's Digest, it is provided that title to streets may not be acquired by the adverse possession thereof, but prior to the passage of this act title had been acquired by adverse possession, and appellee was the possessor of the title thus acquired. However, it is conceded that he lost this title through a proceeding against him in bankruptcy in 1933, and the title he now claims is based upon his adverse possession since that date. The court found that he had thus acquired title to the strip of land in dispute, and awarded him damages for its value when the city opened the street through it.

There was testimony which supports this finding of fact, but we think the preponderance of testimony is to the contrary. Appellee had a desultory possession for a period of more than seven years, during which time he permitted a neighbor to use the lot as a pasture for a cow, and others to plant it as a garden, and he did so himself for one or more years. But we think the preponderance of the testimony by disinterested witnesses most familiar with the property is to the effect that this possession was not of such continuous character as to ripen into title.

The enclosure of this property and the claim of adverse possession thereof depends largely upon the erection and the date thereof of a fence between it and an adjoining lot referred to as the Ray Paschal lot. Paschal testified that he bought the S½ of lots 1 and 2 in 1940, built a house thereon, and has since resided there. He testified as follows:

"Q. State what evidence of possession on the part of Mr. Burton of these lots, if any, you know of, at the time you bought the property? A. I didn't know anything about it. Q. Did you know he was claiming any land in that neighborhood? A. No, not at the time I bought it. Q. When did you discover he was claiming

any property in that neighborhood? A. After I bought it. I didn't know for sure where the lines were. While I was building we couldn't come to an exact agreement where the land, the line was, and he come along and told me he owned this other over here, and they told me it was a street, and at that time we never could get it worked out satisfactorily, and we put a fence up there. My deed didn't call for a street and I lacked 10 feet of having my frontage. Q. That is the first you knew of it, after you built a house there? A. Yes, sir. When I bought it, they told me where the line was, so I wasn't for sure and I had it surveyed.''

There was no cross-examination of this witness.

The testimony to which we give the greatest weight is that of Joe Pearce who had bought all the property described in appellee's bankruptcy proceeding; and it is the Pearce title which appellee claims to have acquired by adverse possession, and Pearce testified that ''there had been no fence in there at all between this piece of property and the Ray Paschal property until Pearce moved there,'' which was in 1940.

Some other testimony tends to sustain appellee's claim of title by adverse possession, while still other testimony contradicts it, in consideration of which we have concluded that appellee has not shown title by adverse possession, and the judgment must therefore be reversed and the cause will be remanded with directions to dismiss the complaint for want of equity.