Delony *v.* Rucker.

5-1248                                              302 S. W. 2d 287

Opinion delivered May 20, 1957.

City of Little Rock *v.* Little Rock and Westwood Water & Light District No. 2.

5-1249

Opinion delivered May 20, 1957.

*Spitzberg, Bonner, Mitchell & Hays,* for appellant.

*Martin, Dodds & Kidd,* for appellee.

*Spitzberg, Bonner, Mitchell & Hays,* for appellant.

*Talley & Owen, Max Howell* and *Gene Worsham,* for appellee.

GEORGE ROSE SMITH, J. These two appeals involve the validity of § 7 of Act 321 of 1955, which reads: "A municipality owning a waterworks system shall operate its entire system in a governmental and not proprietary capacity. The municipality shall have the option of extending its services to any consumer outside the municipal boundaries, but it shall not be obligated to do so. No municipality shall be obligated to supply any fixed amount of water or water pressure to non-resident consumers, nor shall a municipality be obligated to increase the number or size of, or change the location of any mains or pipes outside its boundaries. Water may be supplied to non-resident consumers at such rates as the Legislative Body of the municipality may deem just and reasonable, and said rates need not be the same as the rates charged residents of the municipality. All laws

in conflict with this section are hereby repealed." Ark. Stats. 1947, § 19-4257.

The specific issue here is whether the Little Rock municipal waterworks may charge its nonresident consumers higher rates than those paid by residents of the city. For many years after the municipal plant was acquired in 1936 resident and nonresident customers were charged alike. In 1954 the city council, to finance the acquisition of an additional water supply, undertook the preparation of a new rate schedule. Rate specialists were employed, and public hearings were held. In April of 1955 the city council adopted an ordinance putting the recommended schedule into effect. In addition to increasing the charges within the city limits this ordinance provides that the graduated rates for nonresident patrons (except those in the highest bracket of consumption) shall be 25 per cent more than the corresponding rates within the city.

By these two suits the appellees seek a declaration that the statute and ordinance are void and an injunction against the collection of higher rates outside the city. In Case No. 5-1248 W. S. Rucker, who owns a tourist court near Little Rock, asserts that the statute and ordinance violate the due process clause, the equal protection clause, and other provisions of the state and federal constitutions. Similar allegations are made in Case No. 5-1249, which is a class suit brought by three nonresident domestic consumers and by a water improvement district, the latter also asserting that the increased rate schedule impairs the obligation of a contract which is in force between it and the city. In the courts below it was held in each case that the challenged legislation is void and that the collection of higher rates outside the city should be enjoined.

Neither the statute nor the ordinance is void on its face, as the appellees contend. Granted that the rates charged by a municipally owned public utility must be reasonable and free from arbitrary discrimination, it

does not follow that the exaction of an increased charge for services supplied beyond the city limits is *prima facie* invalid. A city's first duty is to its own inhabitants, who ordinarily pay for the municipal plant, directly or indirectly, and who therefore have a preferred claim to the benefits resulting from public ownership. Upon this reasoning it is held by the decided weight of authority that "the municipality, in the absence of any legislative limitation, may make a discrimination as to rates based solely on the political boundaries of the municipality." Case note, 101 Pa. L. Rev. 160; McQuillin, Municipal Corporations (3d Ed.), § 35.37; *Collier* v. *Atlanta*, 178 Ga. 575, 173 S. E. 853; *Louisville & Jefferson etc. Dist.* v. *Seagram,* 307 Ky. 413, 211 S. W. 2d 122, 4 A. L. R. 2d 588; *Childs* v. *City of Columbia,* 87 S. C. 566, 70 S. E. 296, 34 L. R. A. N. S. 542. The two cases following the minority view are readily distinguishable from the cases at bar. In *City of Texarkana* v. *Wiggins,* 151 Tex. 100, 246 S. W. 2d 622, the court held that higher rates for nonresidents are not permissible in the absence of statute; in Arkansas Act 321 of 1955 provides that statutory authority. And in *City of Montgomery* v. *Greene,* 180 Ala. 322, 60 So. 900, the court stressed the fact that by Alabama law a municipality operates its waterworks as a private corporation and not in the exercise of the power of local sovereignty. In Arkansas, however, the municipality is held to be acting in its governmental capacity, and Act 321 reaffirms this rule. *North Little Rock Water Co.* v. *Water Works Com'n of Little Rock,* 199 Ark. 773, 136 S. W. 2d 194. Thus it is fair to say that no decision supports the view that the Little Rock rate schedule is void on its face.

In holding that the ordinance before us is ostensibly valid we do not imply that there is no limit to the rates that a city may impose upon its nonresident patrons. Although that view prevails in South Carolina, *Childs* v. *City of Columbia, supra,* as a general rule it is held that the municipality's charges must be "fair, rea-

sonable, and just, uniform and nondiscriminatory." Mc-Quillen, *loc. cit.;* cf. *City of Altoona* v. *Pennsylvania Public Utility Com'n,* 168 Pa. Super. 246, 77 A. 2d 740. Act 321 recognizes the traditional view, for it provides: "Water may be supplied to non-resident consumers at such rates as the Legislative Body of the municipality may deem just and reasonable . . ." Needless to say, the reasonableness of the rates fixed by the city council is a matter open to judicial review. *North Little Rock* v. *Rose,* 136 Ark. 298, 206 S. W. 449; *Camden Gas Corp.* v. *Camden,* 184 Ark. 34, 41 S. W. 2d 979.

The burden of proving the city's rate schedule to be arbitrary and unreasonable rested upon the plaintiffs, for the ordinance is entitled to the presumption of validity that legislative enactments ordinarily receive. *Camden Gas Corp.* v. *Camden, supra.* In the cases at bar the plaintiffs contended that the variation between urban and suburban rates is unauthorized as a matter of law; no testimony was offered to show that the difference is unjustified as a matter of fact. On the latter point the city, though not having the burden of proof, adduced testimony that tends to sustain the higher charges imposed upon nonresident consumers. This proof shows that on the average the service to nonresidents involves greater expense to the city than to residents. The filter plant, from which the water is distributed, is inside the city. It is obvious that in any given direction the suburban areas lie farther from this plant than the intervening urban territory. These greater distances are shown to entail increased costs in the installation and maintenance of water mains and in the pumping of water. That the outlying districts are less densely populated than the city itself involves a greater average expense in the reading of meters and the making of service calls. There is in the record no contradiction of the witness Jackson's statement that "prior to the 1955 ordinance we discriminated against our city customers in favor of our nonresident customers." On the undisputed evidence we must conclude

that the appellees failed to meet the burden of proving the new rate schedule to be unreasonable and arbitrary.

The separate contention made by the water improvement district may be answered quickly. In 1925 the private company which then owned what is now the municipal waterworks system agreed to sell water to the residents of this district at the same rates that were then, or might later be, in effect within the city. The performance of this contract was assumed by the municipality when it purchased the system in 1936. It is now asserted by the district that the imposition of the higher nonresident rates constitutes an unconstitutional impairment of the obligation of its contract. To this contention there are two answers. First, an agreement fixing public utility rates to be charged in the future is subject to the sovereign's reserved power of rate regulation and must yield to the exercise of that power. *Camden* v. *Ark. Light & Power Co.*, 145 Ark. 205, 224 S. W. 444; *North Little Rock Water Co.* v. *Water Works Com'n of Little Rock, supra.* Second, this particular contract contains no provision fixing the period of its duration; it is therefore terminable at the will of either party. *Fulghum* v. *Town of Selma*, 238 N. C. 100, 76 S. E. 2d 368; *Childs* v. *City of Columbia, supra.*

Reversed.

MILLWEE, J., dissents.