## MOUNT OLIVE WATER ASSOCIATION *v.* CITY OF FAYETTEVILLE

93-162                                                    856 S.W.2d 864

Supreme Court of Arkansas
Opinion delivered June 28, 1993

*Murry Law Firm*, by: *Kevin C. Murry*, for appellant.

*La Gayle D. McCarty*, Asst. City Att'y, for appellee.

DAVID NEWBERN, Justice. This is an appeal from a summary judgment awarded in favor of the appellee, the City of Fayetteville (City), against the appellant, the Mount Olive Water Association (Association). The City provides water to the Association by contract entered February 2, 1981. The contract term is 20 years with the price to be set by the City from time to time.

On November 20, 1990, the City passed an ordinance establishing current water rates at an amount higher than those being paid. The Association refused to pay the higher rate. The City sued for damages amounting to the difference between the higher rate and the amount paid by the Association. A declaratory judgment was also sought to the effect that the Association is liable for payment for future water service in accordance with the prices set out in the ordinance. The City moved for summary judgment which was granted for damages of $139,833.33 and included a declaration that the 1990 ordinance rates were valid.

The Association argues that summary judgment was improper (1) because the Court was required to regard as true assertions in the affidavit of Jerry Paschal, Manager of the Association, that the rates charged are unreasonable and disproportionate to the cost of delivery, (2) because there was no evidence presented by the City to support the Court's conclusion that the rates were reasonable, and (3) because the City failed to comply with discovery. We affirm the decision because there remained no genuine issue of material fact to be decided by the Court. Ark. R. Civ. P. 56(c).

## 1. Summary judgment and reasonable rates

The burden of showing that there is no remaining genuine issue of material fact and entitlement to judgment as a matter of law is upon the summary judgment movant, and all proof submitted must be viewed most favorably to the party resisting the motion. Any doubt and all inferences must be resolved against the moving party. *Lively* v. *Libbey Memorial Physical Medical Center*, 311 Ark. 41, 841 S.W.2d 609 (1992). Once the movant makes a prima facie showing of entitlement, however, the respondent must meet proof with proof to show a remaining genuine issue as to a material fact. *Anderson* v. *First Nat'l Bank*, 304 Ark. 164, 166, 801 S.W.2d 273, 274 (1990). An affidavit stating only conclusions is not sufficient. *Miskimins* v. *The City Nat'l Bank*, 248 Ark. 1195, 456 S.W.2d 673 (1970). The response and supporting material must set forth specific facts showing that there is a genuine issue for trial. Id. at 1205, 456 S.W.2d at 679.

The resolution of this case requires some consideration of the

obligations imposed upon each of these parties. The contract provides in relevant part:

***

B. *The Buyer Agrees:*

1. . . . . Buyer shall purchase water from the City and not from some other source.

2. To pay the City not later than the due date given on the bill for water delivered in the preceding reading period, in accordance with the rates as established by the City from time to time that may hereinafter be established by the City from time to time. The rates for water and meter service charges presently in effect are illustrated by the attached schedule, marked Exhibit "B", but it is understood and agreed that the City is in no way bound by said schedule, and that the City in its sole discretion has the right to increase or decrease the rates and charges shown therefor, at any time, for the Buyer as for outside City users.

The rates set by the original schedule mentioned in the contract put water rates at $.765 per 1000 gallons and $35.00 per month meter charge. The rates set in the 1990 ordinance set prices effective 8-1-90 at $1.67, effective 1-1-91 at $2.00, effective 1-1-92 at $2.29, effective 1-1-93 at $2.49 and effective 1-1-94 at $2.40 per 1000 gallons.

In support of its motion for summary judgment the City asserted that by virtue of Ark. Code Ann. § 14-234-110 (1987) it is permitted to extend water services at such rates as the legislative body may deem just and reasonable and that such rates were established by enactment of Ordinance #3519. The statute provides:

14-234-110. Waterworks operated in governmental capacity — Services to nonresident consumers.

(a) A municipality owning a waterworks system shall operate its entire system in a governmental and not proprietary capacity.

(b)(1) The municipality shall have the option of

extending its services to any consumer outside the municipal boundaries, but it shall not be obligated to do so.

(2) No municipality shall be obligated to supply any fixed amount of water or water pressure to nonresident consumers, nor shall a municipality be obligated to increase the number or size of, or change the location of, any mains or pipes outside its boundaries.

(3) Water may be supplied to nonresident consumers at such rates as the legislative body of the municipality may deem just and reasonable, and the rates need not be the same as the rates charged residents of the municipality.

The responses to interrogatories show that the City is charged $1.01 per 1,000 gallons and provides water to four nonresident wholesale water customers including the Association. Three of the other nonresident customers paid the same rate as the Association, $2.00 per 1000 gallons, as of January 1991. The responses further explain that the fourth of these customers pays less because it installed additional storage facilities which reduced its maximum day demand usage. The reduced demand factor rate was offered by the City to all other wholesale customers, including the Association, but each failed to construct adequate storage facilities.

The responses also indicate that the rates charged pursuant to the ordinance are based on recommendations found in the *Report on Revenue Requirements, Cost of Service, and Rates for Water and Sewer Services for Fayetteville, Arkansas* prepared by Black and Veatch/Engineers-Architects of Kansas City. The recommendations include a charge for a rate of return equal to 9.8% based on the utility basis method of computing revenue requirements set out in *Water Rates, American Water Works Association M-1*, 3rd Ed.. The method of computation, the report from which the recommendations were taken and the treatise from which the these recommendations arose were provided to the Association in response to requests for production of documents.

In resisting summary judgment the Association submitted the affidavit of Jerry Paschal which, as abstracted, provides:

The City of Fayetteville provides water to Mount

Olive Water Association for distribution to retail customers of Mount Olive Water Association. The City of Fayetteville only transports the water and it does not bear any responsibility or costs of distributing water to the retail customers of Mount Olive Water Association. Mount Olive Water Association, pursuant to the terms of the contract, paid all of the costs involved in the construction of the water line by which the City provides water to Mount Olive Water Association. Ark. Code Ann. § 14-234-110(b)(3) states that: "Water may be supplied to nonresident consumers at such rates as the legislative body of the municipality may deem just and reasonable". However, the rate the City of Fayetteville charges per 1000 gallons of wholesale water is not just or reasonable because it is not only disproportionate to the cost of transporting that water to Mount Olive Water Association, but that rate is also significantly greater than the wholesale rate charged by other municipalities in Northwest Arkansas.

The Association had requested that the City provide information concerning water rates charged by other cities in the region but the City responded that it had no accurate knowledge of such rates. The record is silent concerning the rates charged by any other city in the region.

The pivotal question here becomes whether the assertions of Paschal that the "rate the City of Fayetteville charges per 1000 gallons of wholesale water is not just or reasonable because it is not only disproportionate to the cost of transporting that water . . . but is also significantly greater than the wholesale rate charged by other municipalities in Northwest Arkansas" are, if taken as true, sufficient to raise an issue of material fact with respect to the "reasonableness" of the rates.

We have stated no hard and fast rule regarding what constitutes a reasonable rate or the variables properly employed by which a municipality may charge in these situations. Reasonableness of rates must therefore be dictated by the facts of each situation and the definition of "reasonable" established by the common meaning of the term.

Webster's Third New International Dictionary (Unabridged) (1968) gives several definitions of "reasonable" includ-

ing "not conflicting with reason: not absurd: not ridiculous . . . *b.* being or remaining within the bounds of reason." "Reasoned" is defined as "1. based on or marked by reasoning . . . 2. provided with or marked by the detailed listing or mention of reasons." In this instance the rates are "reasoned" as that term is defined above, and there is nothing provided which shows that the charges are "unreasonable" by virtue of being absurd or ridiculous. The evidence presented by the City showed the rates were based upon "reason" and were "reasonable" in accordance with the diction-ary definitions quoted.

■ The mere assertion that the rate charged is higher than the cost of delivery and higher than that charged by other cities is not enough to raise any issue on the question of "reasonableness" because the information provided by the City details the basis or reasons for the charges. The assertions in the affidavit do not challenge or call into question any of these reasons. We conclude the City made a *prima facie* showing that there were reasons for establishing the challenged rates.

■ As the City met its initial burden, the Association was obliged to meet proof with proof and provide some showing that the reasons advanced were not justified or sufficient or somehow resulted in discrimination. As shown in *Lubin* v. *Crittenden Hosp. Ass'n*, 295 Ark. 429, 748 S.W.2d 663 (1988), something more than conclusory assertions or denials are required. We said in the *Lubin* case:

> In the argument section of his brief the appellant does not favor us with the specific reason he contends the trial court erred in ruling that the appellees were entitled to a summary judgment on the count involving the alleged conspiracy. He only gives us general conclusions.

> The complaint on the point, as abstracted by appel-lant is as follows:

> Appellant, Milton Lubin, filed his Complaint at Law (T. 01-09) alleging the following: A. Civil conspiracy between Appellee to injure his professional reputation and damage to his medical practice by misuse of hospital By-Laws and disciplinary procedure to attempt to discipline him.

> The appellees denied this allegation in their answer.

In appellant's deposition, which was attached to appellees' motion for summary judgment as a supporting document, the appellant admitted that he had no evidence of conspiracy against eight of the board members. In affidavits also attached to the motion as a supporting document, five of the appellees state that they did not conspire with anyone to harm the appellant. In his counter-affidavit, the appellant did not go forward and meet the above proof with proof of his own. Instead, he again denied the allegations and termed them conclusory. He further affirmed "that his investigation had now revealed evidence which confirms his allegations of conspiracy," but he did not state what his investigation consisted of, what new proof he had, or what the conspiracy was. Our summary judgment rule requires that an affidavit in response to a motion for summary judgment be made on personal knowledge and set forth specific facts showing there is a genuine issue for trial. *Hughes Western World, Inc.* v. *Westmoor Mfg. Co.*, 269 Ark. 300, 601 S.W.2d 826 (1980). Here, there was no positive statement based upon personal knowledge to show that the appellees attempted to do an unlawful act, or achieve some unlawful purpose through a series of lawful acts.

The City argued that the statute permits it to charge nonresident customers at a reasonable rate which may be greater than that charged to residents and the contract permits it to change the rates at its discretion. The Trial Court agreed there is no contractual or statutory barrier prohibiting the City from charging a rate greater than the bare cost of transporting the water. We concur that neither the contract nor the statute creates such a barrier. The only barrier is the reasonableness standard which we find to have been met in this case.

In *Delony* v. *Rucker*, 227 Ark. 869, 302 S.W.2d 287 (1957), interpretation of the statutory provisions now codified as § 14-234-110 resulted in our concluding that the rates charged by a municipal waterworks are indeed subject to judicial review, and we defined the outer limits of reasonableness for rate making. We said:

Neither the statute nor the ordinance is void on its

face, as the appellees contend. Granted that the rates charged by a municipally owned public utility must be reasonable and free from arbitrary discrimination, it does not follow that the exaction of an increased charge for services supplied beyond the city limits is *prima facie* invalid.

* * *

In holding that the ordinance before us is ostensibly valid we do not imply that there is no limit to the rates that a city may impose upon its nonresident patrons. Although that view prevails in South Carolina, [citation omitted], as a general rule it is held that the municipality's charges must be "fair, reasonable, and just, uniform and nondiscriminatory." [citations omitted]. . . . Needless to say, the reasonableness of the rates fixed by the city council is a matter open to judicial review. *North Little Rock* v. *Rose*, 136 Ark. 298, 206 S.W. 449; *Camden Gas Corp.* v. *Camden*, 184 Ark. 34, 41 S.W.2d 979.

The burden of proving the city's rate schedule to be arbitrary and unreasonable rested upon the plaintiffs, for the ordinance is entitled to the presumption of validity that legislative enactments ordinarily receive. *Camden Gas Corp.* v. *Camden, supra.*

In the *Delony* case, the plaintiffs contended the variation between urban and suburban rates was unauthorized as a matter of law, but no testimony was offered to show that the difference is unjustified as a matter of fact. The City of Little Rock adduced testimony that sustained the higher charges imposed upon nonresident consumers. We said "on the undisputed evidence we must conclude that the appellees failed to meet the burden of proving the new rate schedule to be unreasonable and arbitrary".

While we are dealing with a summary judgment motion in this instance, and it is true that the initial burden of showing reasonableness fell upon the City, we find ample evidence in support of the rates charged in the pleadings and discovery documents as set out above to establish this initial showing. The City made its *prima facie* case that there is a rational basis for the difference in the rates charged and both the statute and the

contract permit charging different rates. Having made its showing in this situation the burden of showing that the rates are "unreasonable" fell upon the Association, and it was required to come forward with some evidence that there were indeed differing rates being charged similar customers by other municipalities and that that comparison or the comparison between the cost of delivery and the rate being charged somehow rendered the challenged rates "unreasonable." We find no allusion to facts or evidence to sustain this burden and affirm the entry of summary judgment.

## 2. Discovery violation

The Association argues that the City failed to respond completely to its interrogatory requests and that it was error for the Court to grant summary judgment in the absence of these responses. No argument concerning the discovery was presented to the Trial Court, and we decline to address an issue not raised there. *Union Nat'l Bank* v. *Barnhart*, 308 Ark. 190, 823 S.W.2d 878 (1992). The failure, of which the Association's brief here accuses the City, to show all rates since 1981 for all users, is irrelevant to the question of uniformity under the 1990 ordinance as the discovery information shows that all the nonresident customers are paying at the same rate or provides an explanation for varying rates.

Affirmed.