The Honorable Becky Lynn State Representative 105 S. Third Street Heber Springs, Arkansas 72543
Dear Representative Lynn:
This is in response to your request, on behalf of the Mayor of Quitman, for an opinion on the following three questions:
 1. If the city street is shown as a city street on the city plat, but has never been used as a city street, can this street be vacated or abandoned by the Mayor and City Council? If the street can be abandoned, what procedure needs to be followed?
 2. Can a city street that has never been used as a city street be narrowed from a 60' street to a 50' street, by the Mayor or City Council? If this can be done what procedure needs to be followed? Also would this be considered adverse possession of a city street?
 3. Can the City Council of a City owned water system charge property owners one amount for a meter deposit and renters a higher amount for a meter deposit when getting water service?
It is my opinion that the answer to your first question is "yes," the council has the authority to vacate such a street, but only upon written consent of all abutting property owners. The same procedure and answer applies to your second question, involving a portion of a street. This would not be considered adverse possession, because by statute (since 1907), no one can acquire title to a city street by adverse possession. In response to your third question, it is my opinion that the city council would have this authority only if the ordinance setting different charges is reasonable and non-arbitrary. This question will involve a determination of the factual basis supporting the divergent charges.
I should note from the outset that the City of Quitman, which I assume is the city in question, is a city of the second class. Specific statutes governing the vacation of streets in cities of the first class, or with large populations, are therefore not applicable. See, e.g., A.C.A. §14-54-104(2) (1987) (providing for the vacation of streets in cities of the first class); and A.C.A. § 14-301-110 (providing a method for the vacation of streets in cities with populations over 15,000). The relevant subchapter, in my opinion, is A.C.A. §§ 14-301-301 to -306. The first statute in this subchapter provides in relevant part that:
 (a) Cities of the first and second class and incorporated towns are given power and authority to vacate public streets and alleys within the cities and towns under the conditions and in the manner herein provided.
 (b) In all cases where the owner of property within a city or town shall have dedicated, or may hereafter dedicate, a portion of the property to the public use as streets or alleys by platting the property and causing the plat to be filed for record, as provided by law, and any street or alley, or section thereof, shown on the plat so filed shall not have been actually used by the public as a street or alley for a period of five (5) years . . .[1] the city or town council shall have power to vacate and abandon the street or alley, or any portion thereof, by proceeding in the manner set forth in this subchapter.
Further provisions of the subchapter provide for a petition to be filed with the council by the abutting property owners requesting vacation of the street or a portion thereof. See A.C.A. § 14-303-302. Notice and a hearing is required. See A.C.A. § 14-301-302(c) and (d) and 14-301-303. Also required is the written consent of the owners of all lots abutting on the street or alley or portion thereof to be vacated. See A.C.A. §14-301-303. The council must then pass an ordinance vacating the street or portion thereof, using language substantially as set out in the statutes (see A.C.A. § 14-301-304), and the ordinance shall be conclusive unless suit is brought in chancery court within thirty days to challenge the ordinance. See A.C.A. § 14-301-305. Thereafter, each abutting property owner shall take title to all property abandoned by the city.See A.C.A. § 14-301-306.
The answer to your first question is therefore "yes," and the procedure to be followed is that set out above. The answer to your second question is also "yes" and the procedure is the same as set out above. The relevant subchapter applies to the vacation of an entire street or "portion thereof." In my opinion the procedure provided for in this subchapter would not be considered adverse possession, because after the adoption of a 1907 act, now codified as A.C.A. § 14-301-113, "[n]o title or right of possession to any alley, street, or public park, or any portion thereof, in any city or incorporated town in this state shall or can be acquired by adverse possession or adverse occupancy thereof." Seealso City of Magnolia v. Burton, 213 Ark. 157, 209 S.W.2d 684 (1948). Adverse possession of a street or alley by the owner and his grantors for more than the statutory period prior to the enactment of this statute in 1907, however, can form the basis of an adverse possession claim. SeeLittle Rock v. Galloway, 162 Ark. 329, 258 S.W.2d 356 (1929).
In response to your third question, the answer will depend upon whether the difference in the rates or amounts charged property owners and property renters is supported by a "rational basis" and is just, reasonable and non-arbitrary. A factual development of the reasons for the differing charges will be necessary in order to determine whether such a rational basis exists. I cannot come to a conclusive determination without reference to these facts, and in any event, am not empowered as a fact-finder. It was concluded by the Arkansas Supreme Court, in a similar context that:
 We have stated no hard and fast rule regarding what constitutes a reasonable rate or the variables properly employed by which a municipality may charge in these situations. Reasonableness of rates must therefore be dictated by the facts of each situation and the definition of `reasonable' established by the common meaning of the term.
Mount Olive Water Ass'n. v. City of Fayetteville, 313 Ark. 606, 615,856 S.W.2d 864 (1993).
Although the question posed involves the setting of meter deposit amounts rather than "rates," is my opinion that the analysis set out in MountOlive, supra is essentially the same analysis a court would apply to your question. The reasonableness of the "rates" is open to judicial review, and the burden is on the plaintiff (the one challenging the rates) to prove the rates are unreasonable. Id. Ordinances setting water charges are entitled to a presumption of constitutionality. Id. See also Delony v.Rucker, 227 Ark. 869, 302 S.W.2d 287 (1957). The applicability of the "rational basis" test is also appropriate in light of the fact that classifications made between property owners and renters are subjected to this "rational basis" test in challenges made on constitutional grounds, such as under the "equal protection" clause. See, e.g., McSwain v.Commonwealth, 103 Pa. Cmwlth. 326, 520 A.2d 527 (1987), app. denied517 Pa. 600, 535 A.2d 1058. In my opinion, therefore, the question of whether a city council can charge property owners one amount for a meter deposit and renters a higher amount will depend upon the city's rationale for doing so, and the reasonableness of this rationale.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] The omitted language states that "in all cases where all property abutting any street or alley, or section thereof, is owned by any educational institution or college, whether the property shall have been actually used by the public as a street or alley for a period of five (5) years or not" the city shall have power to vacate by proceeding under the subchapter.