The Honorable Charles Whorton, Jr. State Representative Route 5, Box 2242 Huntsville, AR 72740-9049
Dear Representative Whorton:
This official Attorney General opinion is rendered in response to your recent question regarding an agreement entered into between the Town of St. Paul and the St. Paul School District. You have enclosed in your correspondence a copy of the agreement, as well as a copy of a letter from the Town's mayor, indicating some of the concerns regarding the agreement.
You have presented the following question:
 Is the agreement between the Town of St. Paul and the St. Paul School District a legal agreement?
The general question that you have presented requires a factual analysis that this office cannot make. While the Attorney General is required to provide his opinion on certain matters of law to members of the General Assembly and various state officials (see A.C.A. § 25-16-706 (Repl. 1992)), he is prohibited from engaging in the private practice of law. A.C.A. § 25-16-701 (Repl. 1992). Because your question requires a conclusive answer based on a factual determination that is not within the scope of an Attorney General's opinion, I cannot review the terms of the particular contract. Whether the contract is otherwise lawful is a question for the parties' individual counsels to determine. I suggest, therefore, that the mayor consult the Town's local counsel in this matter.
Nevertheless, the documentation that you have provided appears to indicate that there may be some specific concern about one particular provision of the agreement, regarding which I can provide a discussion of applicable law that may assist you in evaluating the provision.
More specifically, it appears that the concern arises out of the following fact situation: A water well was situated on the land of, and owned by, the St. Paul School District. On September 25, 1984, the town of St. Paul and the St. Paul School District entered into an agreement wherein the School District dedicated the use of and access to the well to the town of St. Paul as a town public water supply. The town of St. Paul agreed to accept and develop the well as a public water supply (contingent upon final comment by the Arkansas State Department of Health), to pay all costs associated with development of the well, to freeze the water rates being charged to the School at the current rates in consideration of the school's dedication of the well, and to keep facilities constructed on school property maintained and locked to prevent access by unauthorized persons. The agreement is to become null and void if the town discontinues the use of the well as a public water supply for a period of two or more years. There is evidently some concern that since the town of St. Paul contracted to purchase water from the Mt. Olive Water Association, the city can only meet its financial obligation with Mt. Olive if all customers (including the St. Paul School District) pay according to their usage levels.
Accordingly, your specific concern appears to be whether the Town can agree to grant the School District a special water rate in exchange for the well.[1]
It is my opinion that, depending upon the complexity of the proposed contract and other factors that vary on a case-by-case basis, a court could find that an unusual rate payment conferred as consideration for something of value to the municipality is both just and reasonable.
I have previously opined that charging different rates to different customers can be permissible.
For example, in Op. Att'y Gen. No. 93-44, I stated that there is statutory authority for charging a different rate to customers residing outside the city limits. The rates must, however, be "just and reasonable." Authority for this conclusion stems from A.C.A.14-234-110(b)(3) (1987), which states:
 Water may be supplied to nonresident consumers at such rates as the legislative body of the municipality may deem just and reasonable, and the rates need not be the same as the rates charged residents of the municipality.
The Arkansas Supreme Court has stated that the reasonableness of the rates "is a matter open to judicial review." Mt. Olive WaterAss'n v. City of Fayetteville, 313 Ark. 606, 615, 856 S.W.2d 864
(1993). The court in Mt. Olive stated:
 We have stated no hard and fast rule regarding what constitutes a reasonable rate or the variables properly employed by which a municipality may charge in these situations. Reasonableness of rates must therefore be dictated by the facts of each situation and the definition of `reasonable' established by the common meaning of the term.
Id. at 612-613. The court quoted Delony v. Rucker, 227 Ark. 869,302 S.W.2d 287 (1957) in defining "the outer limits of reasonableness for rate making" (313 Ark. at 615):
 Neither the statute nor the ordinance is void on its face, as the appellees contend. Granted that the rates charged by a municipally owned public utility must be reasonable and free from arbitrary discrimination, it does not follow that the exaction of an increased charge for services supplied beyond the city limits is prima facie invalid.
Delony, 227 Ark. at 871-872. The Delony court went on to explain:
 [W]e do not imply that there is no limit to the rates that a city may impose upon its nonresident patrons. . . . [A]s a general rule, it is held that the municipality's charges must be `fair, reasonable, and just, uniform and nondiscriminatory.' [Citations omitted.]
* * *
 The burden of proving the city's rate schedule to be arbitrary and unreasonable rested upon the plaintiffs, for the ordinance is entitled to the presumption of validity that legislative enactments ordinarily receive. [Citation omitted.]
Id. at 872-873; see also in Mt. Olive, 313 Ark. at 615; Lawrence v.Jones, 228 Ark. 1136, 1141, 313 S.W.2d 228 (1958). In Mt. Olive, the city made a prima facia showing that there was a rational basis for the difference in rates charged. 313 Ark. at 616. The court noted that both A.C.A. 14-234-110 and the contract permitted charging different rates.Id.
The reasonableness of the rates fixed by the city council is a matter open to judicial review. Delony v. Rucker, supra at 873, citing NorthLittle Rock v. Rose, 136 Ark. 298, 206 S.W. 449 (1918). It has been stated that the actions of city authorities will not be judicially interfered with ". . . unless manifestly unreasonable and oppressive, an unwarranted invasion of private rights, or clearly in excess of powers granted. City of Little Rock v. Linn, 245 Ark. 260, 270, 432 S.W.2d 455
(1968); citations omitted.
In Op. Att'y Gen. 87-452, I addressed a question involving a contract to the rates charged inhabitants for distribution of water supply. I am attaching Opinion 87-452 to this opinion so that it may answer any additional questions you might have. In that opinion, I stated that a city has the power and authority to enter a contract to acquire, by purchase or otherwise, a water supply for its inhabitants. Op. Att'y Gen.87-452, citing McGehee v. Williams, 191 Ark. 643, 87 S.W.2d 46 (1935);see also A.C.A. 14-234-108. I concluded in that opinion that different classifications for rate purposes are not precluded as a matter of law, so long as they are not arbitrary or unreasonable.
The above-discussed authorities lend support to a conclusion that a special rate in exchange for consideration of value can be permissible.
My discussion does assume that the contract with the Town's water supplier does not stipulate the rates to be charged consumers within each city. I postulate that this additional fact might affect any conclusion to your inquiry. Also, a court could determine that the indefinite nature of the payment clause (keeping school district rates at the 1984 rate level) is not reasonable or fair to others in the municipality.
However, assuming that there is a rational basis for the different rates, there is no applicable contractual barrier to the particular rates charged, no arbitrary discrimination exists, the contract is otherwise legal, and the rates are not unreasonable, it is my opinion that the answer to your question is yes, such an agreement can be valid.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
WB/SBA/LS:cyh
[1] Some concern may have arisen out of A.C.A. § 14-42-108 (1987), which states in part:
 (a)(1) It shall be unlawful for any official or employee of any municipal corporation of this state to receive or accept any water, gas, electric current, or other article or service from the municipal corporation, or any public utility operating therein, without paying for it at the same rate and in the same manner that the general public in the municipal corporation pays therefor. . . .
 (b)(1) It shall be unlawful for any city official or employee of any municipal corporation in this state to furnish or give to any person, concerns, or corporations any property belonging to the municipal corporation, or service from any public utility owned or operated by the municipal corporation, unless payment is made therefor to the municipal corporation at the usual and regular rates, and in the usual manner, except as provided in subsection (a) of this section. . . .
The only case I have found employing A.C.A. § 14-42-108 is Allen v.State, CR96-1099, ___ S.W.2d ___ (1997). In Allen the Arkansas Supreme Court affirmed a conviction of a mayor who was found to violate A.C.A. §14-42-108(a)(1) when evidence showed that he personally received lower than usual utility rates and that he violated A.C.A. § 14-42-108(b)(1) by adjusting bills of persons and instructed the water and sewer clerk to not send out bills on election day.
The facts of that case, showing that a mayor "used his office to obtain preferential treatment not available to the general public" (Allen v.State, CR-96-1099), appear significantly different from the case you present. In my opinion, and as Allen v. State helps conclude, A.C.A. §14-42-108 prohibits a public official or her/his employees from providing preferential treatment to select persons by giving a public utility without requiring usual rate payments of the general public and such an action benefits the official in some significant manner. This conclusion stems, in part, from what appears to have been the legislative intent behind A.C.A. § 14-42-108: public policy concerns against political leverage, protection for the public against violations of public trust and unequal treatment of like individuals without legal justification, and a common law rule prohibiting municipal officers from "self-dealing" in contracts. See Price v. Edmonds, 232 Ark. 381, 337 S.W.2d 658 (1960) (decision prior to 1981 amendment).