
# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV–16–319

| | |
|---|---|
| | **Opinion Delivered:** February 22, 2017 |
| VEDA ANN STRUBLE <br> APPELLANT | APPEAL FROM THE MISSISSIPPI COUNTY CIRCUIT COURT, CHICKASAWBA DISTRICT [NO. 47BCV-12-199] |
| V. | |
| BLYTHEVILLE SCHOOL DISTRICT <br> APPELLEE | HONORABLE PAMELA B. HONEYCUTT, JUDGE |
| | AFFIRMED |

## BART F. VIRDEN, Judge

Veda Ann Struble appeals an order from the Mississippi County Circuit Court upholding the Blytheville School District's decision to terminate her contract under the Arkansas Teacher Fair Dismissal Act (ATFDA) and granting summary judgment to Blytheville School District. We find no error, and we affirm.

### I. *Facts*

In the spring of 2012, Wesley Freemeyer, a second-grade teacher at Blytheville Primary School, discovered a handwritten letter in the homework folder of a female student in her classroom. In the letter, the student stated that she wished she could see her real mom, that her mother's father touched her where she should not be touched, that she had been touched in her "middle parts," that her mom's dad was a bad man, and that she had some very bad things in her life. The note ended with the request "can you help me please." Freemeyer gave the note to assistant principal Dee Keiter, who was also present in the

classroom. Keiter mentioned the letter to Principal Struble, who admits that she "scanned" the letter but did not read it at that time, and all parties agree that Keiter was told to "handle it." Keiter took the letter and escorted the child back to the office where the child's grandmother was waiting to pick her up because the child had been suspended from school for fighting earlier in the day. Keiter asked the grandmother about the letter, and Keiter testified that the grandmother explained that the abuse had occurred years before when the child was a toddler and that the child had been removed from the abusive household. Later that day, Struble and Keiter met in the vice principal's office, where Struble read the letter and discussed its contents with Keiter, and Keiter relayed to Struble that the child's grandmother had confirmed that the child had been abused. Struble told Keiter to file the letter in the school nurse's file. Both Keiter and Struble were aware that no one had called the child-abuse hotline, and they agreed that there was "no reason to report abuse to the hotline."

A few weeks later, Rhonda Hodges, the school nurse, found the letter on the counter in the medicine closet, a room that is kept locked and to which only the nurse, the assistant principal, and the principal had keys. Nurse Hodges read the letter and became concerned. She spoke to a supervisor, Freemeyer, and Keiter to ascertain if anyone had called the Child-abuse hotline. When Hodges realized that no one had reported the letter, she called the hotline herself.

Richard Atwill, Blytheville School District's superintendent, investigated the incident. On May 18, 2012, Atwill notified Struble that she was immediately suspended with pay and that he was recommending termination for her failure to report suspected

child abuse, because she had represented to Freemeyer that she would call the hotline and did not do so, and because she failed to maintain the chain of custody of the child's letter.

On June 18, 2012, the Blytheville School Board (School Board) held a hearing on the matter. After hearing testimony from Superintendent Atwill, Nurse Hodges, Freemeyer, and Assistant Principal Keiter, the School Board found that the reasons set forth by Atwill to terminate Struble's contract were true. The School Board terminated Struble from her position as principal and directed that she be rehired in a non-administrative position as soon as a position for which she was qualified became available.

Struble appealed the School Board's decision to the circuit court. The School Board filed a motion for summary judgment, which the circuit court granted. The circuit court found that the School Board was entitled to summary judgment as a matter of law, as there was just and reasonable cause for Struble's termination based on her violation of the Mandated Reporter Statute, her failure to maintain a proper chain of custody of the letter, and her delegation of duty as a mandated reporter.

Struble filed a timely notice of appeal.

## II. *Points on Appeal*

### A. Standard of Review

This matter is here as an appeal from summary judgment. The relevant facts are undisputed, and what remains is a question of law: whether the School Board complied with the ATFDA when it terminated Struble's contract. Summary judgment is to be granted by the circuit court only when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Killian v. Gibson*, 2012 Ark.

App. 299, at 6, 423 S.W.3d 98, 101. In reviewing a grant of summary judgment, an appellate court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Id*. This court views the evidence in the light most favorable to the party against whom the motion for summary judgment was filed and resolves all doubts and inferences against the moving party. *Id*.

When the proof supporting a motion for summary judgment is sufficient, the opposing party must meet proof with proof, and the failure to do so leaves the uncontroverted facts supporting the motion accepted as true for purposes of the motion. *See Inge v. Walker*, 70 Ark. App. 114, 15 S.W.3d 348 (2000). In response to a motion for summary judgment, the supporting material must set forth specific facts showing that there is a genuine issue of material fact for trial. *Mount Olive Water Ass'n v. City of Fayetteville*, 313 Ark. 606, 856 S.W.2d 864 (1993).

We recognize a "shifting burden" in summary-judgment motions, in that while the moving party has the burden of proving that it is entitled to summary judgment, once it has done so, the burden then shifts to the nonmoving party to show that material questions of fact remain. *See Ford v. St. Paul Fire & Marine Ins. Co.*, 339 Ark. 434, 5 S.W.3d 460 (1999). When the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact. *Hughes W. World v. Westmoor Mfg.*, 269 Ark. 300, 601 S.W.2d 826 (1980).

B. The Arkansas Teacher Fair Dismissal Act

Under the ATFDA a teacher may be terminated during the term of his or her contract for a material neglect of duty or other just and reasonable cause. *See* Ark. Code Ann. § 6-17-1507(a)(Repl. 2013). A teacher who receives a notice of recommended termination or nonrenewal may file a written request with the directors of the school district for a hearing. *See* Ark. Code Ann. § 6-17-1509. A teacher may be terminated or the school board may refuse to renew the contract of a teacher for incompetent performance, conduct which materially interferes with the continued performance of the teacher's duties, repeated or material neglect of duty, or other just and reasonable cause. *See* Ark. Code Ann. § 6-17-1510(b).

On the matters of suspected child abuse and related duties of its employees, the Blytheville School District Policy 3.40 provides the following:

> It is the statutory duty of certified school district employees who have reasonable cause to suspect child abuse or maltreatment to directly and personally report these suspicions to the Arkansas Child Abuse Hotline, by calling 1-800-482-5964.
> . . . .
> The duty to report suspected child abuse or maltreatment is a direct and personal duty, and cannot be assigned or delegated to another person. There is no duty to investigate, confirm or substantiate statements a student may have made which form the basis of the reasonable cause to believe that the student may have been abused or subjected to maltreatment by another person; however, a person with a duty to report may find it helpful to make a limited inquiry to assist in the formation of a belief that child abuse, maltreatment or neglect has occurred, or to rule out such a belief . . . .

Arkansas Code Annotated section 12-18-402(a)(Repl. 2016) sets forth that an individual listed as a mandated reporter shall immediately notify the child-abuse hotline if he or she has reasonable cause to suspect that a child has been subjected to child

maltreatment. A school official is required to make notification of suspected child abuse. *See* Ark. Code Ann. § 12-12-507(b)(23).

The School Board fired Struble for violating the Mandated Reporter Statute, for delegating her duty as a mandated reporter, and for failing to maintain the chain of custody of the child's letter. Based on our review, it is clear that the circuit court did not err when it found that the School Board had complied with the ATFDA when it terminated Struble for just and reasonable cause. Specifically, the circuit court noted that the School Board had heard uncontested evidence that Struble did not call the child-abuse hotline when she became aware of the contents of the child's letter detailing that she had been touched by her grandfather in her "middle parts" where she should not be touched and that she had "bad things" in her life. The child's letter also contained a plea for help. The circuit court pointed to the fact that Struble admitted that she had delegated the matter to Keiter, who also failed to call the child-abuse hotline, and that she, Struble, had been aware that Keiter had not called the child-abuse hotline. The circuit court cited Struble's admission that Keiter had gleaned from the child's grandmother that the child had been abused in the past; thus, it was uncontested that Keiter had confirmed that actual abuse had occurred and that she had relayed that information to Struble. Struble asserts that because the grandmother had explained that the abuse had occurred in the past, there was no "reasonable suspicion of abuse," and no duty to report the abuse arose. We disagree. There is no temporal caveat set forth in either the Mandated Reporter Statute or the Blytheville School District policy. When Keiter relayed the child's grandmother's confirmation that the child had been abused,

Struble had even more reason to call the child-abuse hotline; indeed, abuse was no longer simply suspected but confirmed by the child's guardian.

Our supreme court has held that inferences to be drawn from undisputed facts must be more than mere possibilities; they must be such that "reasonable minds" would come to "reasonably" different hypotheses. *Flentje v. First Nat'l Bank of Wynne*, 340 Ark. 563, 573, 11 S.W.3d 531, 538 (2000). Examining the abstract and record, it is evident that no such reasonable inferences are present and that Struble thus failed to "meet proof with proof." The School Board presented the fact that Struble had read the child's letter detailing abuse, naming her abuser and asking for help. Struble admits that Keiter had confirmation from the child's grandmother that abuse had occurred. Struble failed to present uncontroverted facts to support her argument that she had no reasonable cause to suspect child abuse, which left the uncontroverted facts supporting Blytheville's motion accepted as true for purposes of their motion.

We hold that the circuit court did not err in finding that Struble failed to show that a genuine issue of material fact remained, or that reasonable, differing inferences could have been drawn from the undisputed facts. On this point we affirm.

### C. Struble's Remaining Points on Appeal

Though Struble acknowledges that the only real issue here is whether she violated the Mandatory Reporter Statute by not calling the child-abuse hotline, she reasserts her arguments from her response to the School Board's motion for summary judgment. We briefly acknowledge them here, and we hold that none of these arguments has merit.

SLIP OPINION

Struble also asserts that she would have been susceptible to prosecution for making a false report pursuant to Ark. Code Ann. § 12-18-203, which sets forth that a person commits the offense of making a false report if he or she purposely makes a report containing a false allegation to the child-abuse hotline knowing the allegation to be false. Because Struble admits that she knew the allegation of child abuse to be true, the false-reporter statute could not possibly be applied to her under these facts. Struble's argument is not well taken.

Struble also argues that her contract was terminated because she followed the school district's policy set forth in section 3.40, which allows a school official to make a "limited inquiry to assist in the formation of a belief that child abuse, maltreatment or neglect has occurred, or to rule out such a belief." Nothing in the school district's policy suggests that if, after making an inquiry and a school official ascertains that abuse has occurred, he or she is no longer required to report the child abuse. As we discussed above, Struble confirmed abuse had occurred after a limited inquiry, and her argument concerning the inquiry provision in the policy is misplaced. We find Struble's argument unpersuasive.

Struble asserts that she was only required to "substantially comply" with the school district's handbook policies and cites the following language from the ATFDA:

> A nonrenewal, termination, suspension, or other disciplinary action by a school district shall be void *unless the school district substantially complies with all provisions of this subchapter and the school district's applicable personnel policies.*

(Emphasis added.) Clearly, the plain language of the statute indicates that the "substantial compliance" standard applies to the school district's compliance with its own personnel policies, and does not, as Struble argues, apply to the terminated employee's behavior.

Struble also argues that the release-and-settlement agreement (agreement) between herself and the State Board of Education (BOE) constituted a reversal of the School Board's decision to terminate her contract. In the agreement, the BOE and Struble agreed that "in order to amicably resolve all claims, disputes and matters of controversy" the parties agreed that all findings related to the ethical violations asserted to the Professional Licensure Standards Board (PLSB) were dismissed; and Struble agreed to withdraw her "written exceptions and brief" concerning the PLSB's decision; Struble agreed to release the PLSB from any and all claims against it concerning the matter. The last line of the agreement set forth that

> [t]his release and discharge is not applicable to the Blytheville School District, specifically regarding a pending "Appeal of Termination of Contract Under Teacher Fair Dismissal Act" in the Circuit Court of Mississippi County, Arkansas, Chickasawba District Civil Division. CV-2012-199(PH).

(Emphasis in the original.)

Furthermore, the ATFDA sets forth that "the exclusive remedy for any nonprobationary teacher aggrieved by the decision made by the board of directors shall be an appeal therefrom to the circuit court of the county in which the school district is located[.]" Ark. Code Ann. § 6-17-1510(d)(1). Thus, the settlement agreement between Struble and the BOE has no bearing on the School Board's decision or this appeal.

We hold that the circuit court did not err in granting summary judgment in favor of the Blytheville School District.

Affirmed.
VAUGHT and HIXSON, JJ., agree.

*James W. Harris*, for appellant.
*Richard Glassman* and *James F. Horner Jr.*, for appellee.