### Pacini *v.* Haven.

4-4647

Opinion delivered May 10, 1937.

*Brewer & Cracraft, F. F. Harrelson* and *Randolph & Randolph,* for appellant.

*Marvin B. Norfleet, E. J. Butler* and *C. W. Norton,* for appellee.

Humphreys, J. Appellee obtained a decree against appellant in the chancery court of St. Francis county

for $10,500 which amount he alleged he was induced by appellant and his co-conspirators to put into the business of the Memphis Theatre & Equipment Company, a partnership composed of Charles F. Boyd, Nello Pacini and Joe Pacini, through false and fraudulent representation purporting to show the quantity and value of the assets belonging to said partnership, and that the business was a prosperous, growing business; whereas, in fact the business was insolvent and being operated at a loss; or, if the operation of said business was not resulting in a steady loss, then the amount appellee put into the business was wrongfully appropriated by said appellant and his associates together with the earnings of said business, which was operated under their exclusive control.

The allegations of fraud and wrongful conversion of the funds were denied and the issues joined were tried by the court with the above result, from which decree is this appeal.

The partnership business in which appellee and his associate, Harry Bogart, purchased an interest was owned by Charles F. Boyd, Nello Pacini and Joe Pacini. They operated five local cinema theatres in Memphis, Tennessee, under leaseholds. Charles F. Boyd was an experienced motion picture theatre operator having been engaged in the cinema theatre business a long time. L. F. Haven, appellee, had been engaged in the same kind of business for sixteen years in Arkansas and owned and operated cinema theatres in Marianna, Wynne, Brinkley and Forrest City. Harry Bogart managed the Marianna theatre for him. On account of being engaged in the same kind of business Haven and Boyd became acquainted and in May, 1931, began negotiations relative to Haven buying an interest with Boyd in the cinema theatres in Memphis. During that time Haven made several visits to the theatres and made a check on the number of patrons attending them. They had meetings in Memphis and Forrest City to talk the matter over. Boyd informed Haven that they had expended large amounts in repairing and remodeling and

purchasing certain equipment, and, in doing so, had incurred an indebtedness for $6,500 for borrowed money to appellant, the father of his two partners, and of $5,400 to Joe Pacini, one of his partners. He stated that the partnership needed money with which to meet some of the obligations and to carry on the business. Haven suggested that he could put some money into the business, but preferred, in case he did, that they incorporate. It was suggested that Haven take stock for the money he might put in; that Joe Pacini take stock for what they owed him and his interest in the business; that Boyd take stock for the interest he had in the partnership and that they pay appellant what they owed him in cash. The three partners, Haven, Bogart and his attorney, J. L. Daggett, and perhaps Ben C. Welch, the attorney for the partnership, all met in the firm's office in the Ritz Building in Memphis pursuant to an understanding in the forenoon of July 14, 1931, with the view of coming to a definite agreement about the sale and purchase of the partnership assets and business and a plan to incorporate the business. The books and records kept by the partnership were inspected by Haven, Bogart and his attorney. The books reflected that the business had been making money. No final agreement was reached at the morning meeting so they agreed to meet again in the afternoon for further discussion. Appellant met with them in the afternoon on invitation to discuss the debt the partnership owed him. During the morning meeting, Haven objected to paying appellant's debt in cash and suggested that he be requested to take stock in the proposed corporation in payment of his debt. Boyd and his partners represented that the business was a profitable business and exhibited the books and records in substantiation of their statements. Appellant refused to take stock in payment of the indebtedness due him saying that while the business had been profitable he wanted his money to put in another business that he regarded as more profitable. He was urged by both Boyd and Haven to take stock in the proposed corporation in payment of the indebtedness, but he refused to do so. He

agreed, however, to take the individual notes of Haven or the notes of the proposed corporation with Haven's indorsement in payment of his indebtedness. It was then agreed that Haven would execute his individual notes payable in one and two years for $6,500 to appellant and that the corporation would obligate itself to pay the notes, which it afterwards did do by a resolution. It was also agreed that Haven would execute his note to Joe Pacini for $5,400 to cover his indebtedness against the partnership which should be exchanged for stock in the corporation. This was done after the corporation was organized. It was also agreed that Haven would advance $3,500 in cash in payment of stock to be issued which he was to take in the proposed corporation and that said sum would be deposited in a bank in Forrest City for use by the new corporation to be checked out as needed by Haven and the $2,500 advanced by Bogart as a payment on stock in the proposed corporation should be deposited in a bank in Memphis to be checked out by Boyd as needed in the operation of the business. A few days afterwards, a corporation was organized and a charter was obtained from the state of Tennessee to the Memphis Theatre & Equipment Company, Inc. Stock in the new corporation was issued to the several parties as per agreement, the majority thereof being issued to Haven and Bogart. Haven was duly elected president and Boyd duly elected manager of the corporation. Bogart became an employee of the new corporation. The corporation took over the business of the partnership and proceeded to operate the theatres. There were frequent meetings of the stockholders and Board of Directors at which Haven generally presided. Daily reports of the business were made by Boyd to Haven and mailed to him in Forrest City, but Haven finally directed that they be discontinued. Haven sent Boyd checks on the account in Forrest City when requested to do so, but on account of the frequency of the requests finally sent him a check for the entire balance in the bank. The statements sent to Haven by Boyd showed that the volume of business continued for several months to be about

the same the partnership books showed it was prior to the organization of the corporation. Later the business decreased and the expenses increased and both Haven and Boyd bought more stock until Haven, including the first $3,500, had advanced up to $10,500 and, including the $2,500 advanced at first, Bogart advanced a total of $4,200. The advances by Haven and Bogart were made mostly at intervals during the year, 1931. In February, 1932, Haven advanced $1,500 to pay a note for $1,500 for the corporation he had personally indorsed making a total in advances to the corporation of $10,500. A final stockholders' meeting was held on March 11, 1932, at which Haven presided. A resolution was unanimously passed at that meeting that due to the financial depression and to protect the company's creditors it was best to transfer all capital stock to Boyd with full power to so handle the company's assets that it might continue and not become insolvent, and the transfer of the stock was accordingly made. Haven resigned as president and director and Boyd was elected as president. About two months later Boyd being unable to continue the business surrendered the charter to the state and the leases on the various theatres were forfeited to the owners and the corporation ceased to do business. There is no evidence in the record tending to show just what assets were owned by the partnership at the time it was taken over by the corporation; none showing that the books and records of the partnership exhibited to appellee when he bought an interest in the partnership were incorrect; none indicating that they were padded or manufactured for the purpose of deceiving appellee and Bogart as to the condition of the partnership business. The representations made by the partners, which were confirmed by appellant, tallied with the books and records. Representations that the partnership was in need of ready money or cash were made, and all the parties understood at the sale of the partnership and the reorganization thereof into a corporation and the sale of stock to appellee and Bogart was for the purpose of raising money to meet outstanding obligations and to operate

the business. There is no evidence in the record showing that appellant was interested in the business as a partner or that he had ever been. Appellee and all the parties concerned according to the record knew that the partnership was indebted to appellant in the sum of $6,500 for borrowed money and to Joe Pacini in the sum of $5,400 for borrowed money. There is nothing.in the record tending to show that appellant had anything to do with the management of the corporation after it was organized or that he ever received a dollar from it while it was in existence. Just what became of all the money is not revealed by the record, but appellee was in a better position than appellant to know what became of the money earned by the corporation and that he and Bogart paid into the corporation for stock. He was its president, a member of the board of directors and he and Bogart owned a majority of the stock. The resolution passed at the last meeting of the stockholders over which appellee presided attributed the financial troubles of the corporation and its losses to the depression.

A reading of the entire record indicates that appellee was a successful operator of this kind of picture shows in Arkansas and that he was quite anxious to acquire a foothold in Memphis in the same business and that after making all the investigations he desired to make of these particular theatres he seized the opportunity to buy an interest in them irrespective of business hazards incident to conducting a business in times of depression.

After the corporation failed and went out of business he made no complaint that deceit and fraud had been practiced upon him in the sale and purchase of the business and took no action to recover the money he had invested in the theatre business in Memphis. The first effort he made in this direction was after he had been sued by appellant on the notes of $6,500 which he had executed to him in 1931.

This court said in the case of *Stuttgart Rice Mill Company* v. *Lockridge,* 185 Ark. 340, 47 S. W. (2d) 596, that fraud is never presumed, but must be proved and

that the burden of proof is on the party alleging it and that while fraud need not be shown by direct or positive testimony, but may be proved by circumstances where, taken together, they are inconsistent with an honest intent; but slight circumstances or suspicion, leading to no certain result, are not sufficient to establish fraud. This court has also said in a number of cases, among them *Welch* v. *Farber,* 188 Ark. 693, 67 S. W. (2d) 588, that one cannot wait an unreasonable time before resorting to the courts to seek redress on the ground of fraud. An examination of this record convinces us that the chancellor erred in finding that a preponderance of the evidence established the allegations of fraud contained in appellee's complaint. Our analysis of the evidence is that no fraud either in the way of representations or in the wrongful conversion of money by appellant was shown. The rule is that fraud alleged must be proved by clear and satisfactory evidence and appellee has failed to bring himself within this rule. On account of the error indicated the decree is reversed, and appellee's complaint is dismissed.