Steven O'MARA, et al. *v.* Dan DYKEMA, et al.

96-1043 942 S.W.2d 854

Supreme Court of Arkansas
Opinion delivered April 28, 1997

*Everett Law Firm*, by: *David D. Stills* and *Thomas A. Mars*, for appellants.

*Gocio, Dossey & Reeves*, by: *Jerry B. Dossey*, for appellees.

RAY THORNTON, Justice. Appellants Steven and Cynthia O'Mara purchased a home from appellees Dan and Lisa Dykema on December 11, 1992. Appellees had been living in the house, which they built by hiring various materialmen, for approximately two years. They were approached by a realtor who asked them if they would consider an offer from appellants to buy the house. Although the house had not been on the market, they accepted the offer.

Appellants elected to inspect the house themselves prior to purchasing it, rather than hire a professional. The exterior walls of the house are made of a material called "dryvit," a plastic material similar to stucco. Upon inspection, appellants noticed a hole in an outside wall, which appellees told them was caused by a rock

pitched by a lawn tractor. Appellants repaired the hole at their expense.

In 1995, after living in the house approximately three years, appellants became aware that the exterior walls were cracking and crumbling and moisture was entering the house through these cracks. They filed a complaint against appellees, alleging misrepresentation, negligence, strict liability, and breach of warranties. Appellees filed a motion for summary judgment on all four claims, which the trial court granted. Appellants bring this appeal from the order granting summary judgment, and we affirm.

In support of their complaint, appellants alleged that appellee Dan Dykema was a professional real estate contractor and that he built the house; that appellees had encountered problems with the application of the dryvit to the exterior walls, and had allowed the subcontractor to take shortcuts as a temporary solution; and that at the time appellants purchased the house, there was no visible evidence of any defect. Further, they asserted that appellees knew the walls were defective and would eventually crack, bubble, and crumble, and that they failed to disclose this defect to appellants in order to induce them to buy the property.

Appellants claimed that appellees represented the walls to be in good condition, and that the condition of the walls was material to their decision to buy the house. They maintained that appellees impliedly warranted that the house was habitable, had been properly constructed, and was in good condition. Appellants' complaint also stated that appellees owed a duty to them to exercise reasonable care in the construction of the home, that they failed to do this, and that this failure proximately caused them damage.

Appellees denied that they had made any misrepresentations to appellants or that they had any knowledge that the dryvit was defective. Pleading affirmatively, appellees' answer stated in pertinent part that the statute of limitations had run on the negligence claim, as more than three years had elapsed since the home was constructed. Further, they claimed that appellants had waived any reliance on warranties in their offer to buy the house.

At the hearing on the motion for summary judgment, the arguments centered around whether appellees could be considered a builder-vendor for purposes of the implied warranty of habitability. Appellees filed a supplemental brief in which they urged the court to find that the fact that they had hired multiple contractors to build a residence according to prepared plans and specifications and for their own occupancy, and that on a previous occasion they had built another house in which they resided for a number of years, did not make them a builder-vendor for the purposes of the implied warranty of habitability.

 *Standard of review.* The standard of review for a grant of summary judgment is familiar. Summary judgment should only be granted when it is clear that there are no disputed issues of material fact. *Franklin v. Osca, Inc.*, 308 Ark. 409, 825 S.W.2d 812 (1992). It is appropriate to sustain a grant of summary judgment if the evidence brought before the trial court by the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Tullock v. Eck*, 311 Ark. 564, 567, 845 S.W.2d 517, 519 (1993); Ark. R. Civ. P. 56(c).

 Appellees, as movants for summary judgment, bear the burden of showing that there is no issue of material fact. *Gleghorn v. Ford Motor Credit Co.*, 293 Ark. 289, 737 S.W.2d 451 (1987). All evidence must be viewed in the light most favorable to appellants, as they are the parties resisting the motion; and they are also entitled to have all doubts and inferences resolved in their favor. *National Bank of Commerce v. Quirk*, 323 Ark. 769, 918 S.W.2d 138 (1996). However, they may not rest upon the mere allegation of their pleadings; Ark. R. Civ. P. 56 requires their response, by affidavits or other evidence, to specifically show that there is a genuinely disputed issue of material fact. *Guthrie v. Kemp*, 303 Ark. 74, 793 S.W.2d 782 (1990). Once a movant makes a prima facie case for summary judgment, the respondent must then meet proof with proof by showing that there remains a genuine issue of material fact. *Mt. Olive Water Ass'n v. City of Fayetteville*, 313 Ark. 606, 856 S.W.2d 864 (1993).

Even if there are disputed facts, if reasonable minds would not differ as to the conclusion to be reached, then a grant of summary judgment is proper. *Chalmers v. Toyota Motor Sales*, 326 Ark. 895, 935 S.W.2d 258 (1996). Further, if a respondent to a motion for summary judgment cannot present proof on an essential element of the claim, the movant is entitled to summary judgment as a matter of law. *Short v. Little Rock Dodge, Inc.*, 297 Ark. 104, 759 S.W.2d 553 (1988).

We examine each of appellant's allegations based upon this standard of review and affirm the trial court's judgment for the reasons set forth below.

*Misrepresentation.* Appellees were entitled to summary judgment as a matter of law on the claim of misrepresentation because appellants failed to present proof on essential elements of the claim. *Id.* The elements of a cause of action for misrepresentation are:

(1) a false representation of a material fact;

(2) knowledge or belief on the part of the person making the representation that the representation is false;

(3) an intent to induce the other party to act or refrain from acting in reliance on the misrepresentation;

(4) a justifiable reliance by the other party; and

(5) resulting damages.

*Interstate Freeway Serv., Inc. v. Houser*, 310 Ark. 302, 306, 835 S.W.2d 872, 873-74 (1992). Appellants failed to produce a genuine issue of material fact that appellees knew the dryvit was defective or that they falsely represented to them that it was not defective. They asserted in affidavits that Lisa Dykema told them she had problems with the dryvit contractor that were never resolved. Mrs. Dykema stated in her affidavit that the dryvit contractor who did the original work on the home did not show up on time and did not finish his work on time. Appellants failed to meet proof with proof because they brought forth no specific facts indicating that appellees experienced problems with the dryvit itself or knew it was defective, much less that they falsely repre-

sented these facts. Ark. R. Civ. P. 56; *Guthrie v. Kemp, supra*. Representations are considered fraudulent when the one making them either knows them to be false or, not knowing, asserts them to be true. *Miskimins v. City Nat'l Bank*, 248 Ark. 1194, 456 S.W.2d 673 (1970). A grant of summary judgment on a claim of misrepresentation is appropriate when a plaintiff does not produce specific facts that the defendant knew his representations were false. *E.g., Rosser v. Columbia Mut. Ins. Co.*, 55 Ark. App. 77, 928 S.W.2d 813 (1996).

██ ██ *Negligence*. Appellants' complaint alleged that appellees breached a duty of care when they failed to exercise reasonable care in the construction of the home. Their claim is barred by the statute of limitations, as the complaint was filed more than four and one half years after the house was built. It has long been the law in this state that a three-year statute of limitations applies to all tort actions not otherwise limited by law. *Burton v. Tribble*, 189 Ark. 58, 70 S.W.2d 503 (1934); Ark. Code Ann. § § 16-56-104 — 105 (1987 & Supp. 1995). The statute begins to run when the acts occur. *Courtney v. First Nat'l Bank*, 300 Ark. 498, 780 S.W.2d 536 (1989). However, affirmative actions of concealment of a cause of action will toll the statute of limitations. *Wilson v. General Elec. Capital Auto Lease, Inc.*, 311 Ark. 84, 841 S.W.2d 619 (1992). When there have been affirmative acts of concealment, the statute begins to run again at the time the cause is discovered or should have been discovered by reasonable diligence. *Id*. We have stated that "no mere ignorance of the plaintiff of his rights nor the mere silence of one who is under an obligation to speak, will prevent the statutory bar." *Id*. at 87, 841 S.W.2d at 620-21 (quoting *McKneely v. Terry*, 61 Ark. 521, 565, 33 S.W. 953, 957 (1896)). There must be some "positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that conceals itself." *Id*. Further, "if the plaintiff, by the exercise of reasonable diligence, might have detected the fraud, he is presumed to have had reasonable knowledge of it." *Id*.

Here, the pertinent inquiry is whether there is any genuine issue of material fact concerning the statute of limitations. *Hickson v. Saig*, 309 Ark. 231, 828 S.W.2d 840 (1992). Although an alle-

gation of fraudulent concealment typically involves a question of fact not well suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, the trial court may resolve fact issues as a matter of law. *Chalmers v. Toyota Motor Sales, supra.*

Appellants argue that the statute should be tolled because the defect was latent and the facts stated in their cause of action for misrepresentation are sufficient to prove fraudulent concealment. This argument is without merit.

■ As we noted in our discussion of the misrepresentation claim, appellants offered the trial court nothing to indicate that appellees experienced problems with the dryvit itself or knew it was defective. They put forth no evidence of any affirmative acts of concealment by appellees of any defective condition. Therefore, we hold that there was no genuine issue of material fact as to fraudulent concealment and find that the trial court properly granted summary judgment on this claim. *Id.*

■ *Strict liability.* Appellants argue that the trial court should have found appellees strictly liable for the defect, because they supervised the building of the house. To sustain a cause of action for strict products liability, it is necessary to prove that the product, in this case the house, was in a defective condition unreasonably dangerous. Ark. Code Ann. § 16-116-102 (1987); *see also Berkeley Pump Co. v. Reed-Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128 (1983) (stating that the fact that product does not meet expectations of user does not meet definition; must be "unreasonably dangerous" as well as defective). Reviewing appellants' pleadings and affidavits, we do not find any assertion that the degradation of exterior wall surfaces made the house unreasonably dangerous. Because we find that they did not plead or provide proof of this essential element of the claim, we affirm the trial court's decision.

■ *Implied warranty of habitability.* Appellant's final argument is that the trial court erred in holding that there was no genuine issue of material fact that appellees impliedly warranted that the house was habitable, had been properly constructed, and was in good condition. In *Wawak v. Stewart*, 247 Ark. 1093, 449

S.W.2d 922 (1970), we adopted the view that by operation of law, a builder-vendor gives implied warranties of habitability, sound workmanship, and proper construction. The implied warranty does not rest upon an agreement, but arises by operation of law and is intended to hold the builder-vendor to a standard of fairness. *Wingfield v. Page*, 278 Ark. 276, 644 S.W.2d 940 (1983). However, implied warranties may be excluded when the circumstances surrounding the transaction are in themselves sufficient to call the buyer's attention to the fact that no implied warranties are made or that a certain implied warranty is excluded. *See Carter v. Quick*, 263 Ark. 202, 563 S.W.2d 461 (1978); 77A C.J.S. *Sales* § 266 (1994).

The language of the Uniform Commercial Code provides appropriate reasoning by analogy. Under the provisions of Ark. Code Ann. § 4-2-316, all implied warranties are excluded by expressions such as "as is," "with all faults," or "other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." *Id.* § 4-2-316(a). Regarding real estate contracts, we have held that the implied warranty of habitability is waived when the buyer purchases the property "as is." *Bankston v. McKenzie*, 287 Ark. 350, 698 S.W.2d 799 (1985).

We think it is clear from the language of the contract of sale, *which appellants drafted*, that there was no intent on their part to rely upon any implied warranties. Paragraph Fifteen of the contract states:

> Buyer's Disclaimer of Reliance:
>
> Buyer certifies that buyer has personally inspected the property as fully as buyer desires and is not relying and shall not hereafter rely upon any warranties, representations or statements of seller or agent as to age, size, quality, value or condition of improvements or appliances, other than those specified herein, if any, whether or not defects may be reasonably discoverable by buyer.

Paragraph Sixteen, under the heading "INSPECTION AND REPAIRS," states that appellants agreed to accept the property "*as is*," providing only that certain specified electrical, plumbing, heating and air-conditioning appliances and other mechanical

devices be in normal working order. The contract acknowledges appellants' right to have the property inspected by a professional inspector and to provide written notice of any defects. Further, it notes that they agreed to accept any responsibility for repairing any defects in the structure not noted in writing within ten business days following appellees' acceptance of the offer. Paragraph Twenty states that the agreement contains the entire agreement between the parties, and supersedes all prior or contemporaneous agreements.

Having drafted the document themselves, appellants can make no serious argument that it was not called to their attention that they were not relying upon implied warranties. The offer that they presented stated that they were purchasing the property "as is"; therefore, the trial court was correct in finding that there was no genuine issue of material fact that they had a cause of action for a breach of the implied warranty of habitability. *Bankston v. McKenzie, supra.*

The decision of the trial court granting summary judgment on all four claims is affirmed.