Mark ADAMS, *et al. v.* Richard WOLF, *et al.*

CA 00-700                                          43 S.W.3d 757

Court of Appeals of Arkansas
Divisions I, III, and IV
Opinion delivered May 2, 2001·

*Conner & Winters, P.L.L.C.*, by: *John R. Elrod* and *Terri Dill Chadick*, for appellants.

*Friday, Eldredge & Clark*, by: *William A. Waddell, Jr.*, for appellees.

J OSEPHINE LINKER HART, Judge. This case arises out of a lawsuit in which appellants sought damages from appellees for breach of warranty, breach of contract, and fraud. The trial judge granted summary judgment in favor of appellees on the ground that appellants' claims were barred by the applicable statutes of limitation. On appeal, appellants argue that the summary-judgment ruling was erroneous as it pertained to their cause of action for fraud. We agree and reverse and remand.

Appellants are forty individuals and five corporations engaged in the business of growing turkeys. In the 1980s and 1990s, their turkeys were processed at a Huntsville, Arkansas, plant operated by appellee Swift-Eckrich, Inc., a subsidiary of appellee Conagra, Inc. The plant's production manager was appellee Richard Wolf.[1] Appellants did not contract directly with Swift during this period but operated through two independent producers, Hugh McClain and Kirk Powell. McClain and Powell had written contracts with Swift whereby they purchased turkey poults from Swift, then resold the grown turkeys back to Swift for processing.

On October 21, 1998, appellants sued appellees, seeking compensatory and punitive damages for breach of warranty, breach of contract, and fraud. On the fraud count, they complained that appellees' improper weighing practices caused appellants to be paid less than they were owed. The thrust of their allegations was that appellees allowed turkeys arriving at the plant to remain on the trucks too long, causing significant shrinkage and death of turkeys; that appellees charged appellants with all dead-on-arrival turkeys without regard to fault; and that appellees improperly weighed condemned parts and carcasses. Appellants did not state a specific time period during which the abovementioned fraudulent conduct took place. However, they alleged that, beginning in 1983 and ending in March 1992, appellees concealed their misconduct so as to prevent appellants from becoming aware of their cause of action.

Appellants' lawsuit is one of many that have been filed by turkey growers against Swift since 1992. Two of the prior lawsuits that are of particular interest in this case are *Jennings v. Swift-Eckrich*, filed in federal court in Arkansas in 1993, and *Taylor v. Swift-Eckrich*, filed in federal court in Arkansas in 1994. In *Jennings*, the plaintiffs attempted certification of a class that would likely have included many of the appellants herein, but certification was denied. There is no conclusive evidence in the record before us that appellants had actual knowledge of the *Jennings* class-action attempt. In *Taylor*, certification of a similar class was attempted, and certification was granted in 1996. Appellants were notified as potential class members in approximately November 1996, but opted out, choosing instead to file the lawsuit that is the subject of this case.

---

[1] Appellants direct their arguments on appeal strictly to appellee Swift. Therefore, we conclude that they agree with the trial court's dismissal of appellees Conagra and Wolf.

On May 25, 1999, appellees filed a motion for summary judgment. They argued that the complaint that appellants filed against them in 1998 was barred by the three-year statute of limitations applicable to fraud. Appellants responded that genuine issues of fact remained as to whether appellees had fraudulently concealed appellants' cause of action, thus tolling the limitation period until they discovered appellees' misconduct in November 1996, upon receiving notice of the *Taylor* class action.

Appellants and appellees attached over sixty exhibits to their pleadings filed in connection with the motion for summary judgment. Appellees used their exhibits to emphasize their claim that appellants either knew or should have known of the cause of action for fraud before November 1996. Included among those exhibits were the depositions of Hugh McClain and Kirk Powell. In McClain's deposition, he stated that the existence of the *Taylor* class action was common knowledge in the poultry industry prior to the time that notice of it was received and that he verified his belief that Swift was engaging in misconduct at the time another turkey grower's lawsuit was filed in 1992. In Powell's deposition, he stated that, at a November 1996 meeting with growers who were potential class members in the *Taylor* suit, the attorney speaking to the group expressed concern about the statute of limitations and agreed that "everyone in the room" knew about Swift's incorrect weighing practices and questions regarding condemnation calculations. Appellees also attached as exhibits the pleadings in several lawsuits that other turkey growers had filed against Swift. Between 1992 and 1996, approximately thirty such suits were filed, based upon allegations the same as or similar to those in this case. Other than the *Jennings* and *Taylor* cases previously mentioned, the most prominent of the suits was *Jackson v. Swift-Eckrich, Inc.*, filed in federal court in Arkansas by two individual growers in 1992. The suit resulted in a $341,500 verdict in favor of the growers in August 1993. The verdict was reported in newspapers throughout northwest Arkansas, and appellees attached copies of the newspaper articles to their motion. Appellees also attached excerpts from the trial testimony in the *Jackson* case in which two growers, Bill Jackson and Jack Greer, stated that they had been permitted to observe the weighing process at the Swift plant.

In response to appellees' summary-judgment motion, appellants filed approximately forty affidavits stating that they were unaware until they received notice in the *Taylor* lawsuit in November 1996 that Swift was engaging in the improper practices set forth in their complaint. Approximately eight of the affiants stated that they

suspected wrongdoing earlier, but did not actually learn of it until 1996 or later. All but one also stated that they had not read the newspaper articles that reported the 1993 *Jackson* verdict. Appellants also attached numerous investigative reports and letters of correspondence between Swift and the Packers and Stockyards Administration (hereafter "the PSA"), the federal agency charged with regulating packers such as Swift, pursuant to the Packers and Stockyards Act. *See* 7 U.S.C.A. §§ 181 to 229 (1999 & Supp. 2000). Those exhibits reveal that, as early as 1984, Swift's weighing practices and turkey marketing contracts had come under PSA scrutiny. The PSA was particularly concerned that Swift was allowing turkeys to remain on trucks too long before they were weighed and that Swift was improperly computing the weight of condemned carcasses, parts, and dead-on-arrival birds. Swift informed the PSA at that time that it believed its practices were proper and that the hauling of birds to the plant in a timely manner was the responsibility of the growers. Its practices continued until at least 1989, and possibly 1992, when Swift put certain procedures into place that apparently satisfied the PSA.

Additionally, appellants attached the affidavit of an economist, Dr. Leonard White. Dr. White stated that he had been working on cases involving Swift and its growers for over four years. He conducted an examination of the weighing tickets issued by Swift and determined that a great deal of variation was found in the tare (empty) weights for each trailer. His conclusion was that the large variations could only be explained by deliberate manipulation. He examined approximately 5,891 tickets to reach his conclusion and stated that it was only after he had examined thousands of tickets that he became aware of the possibility of deliberate manipulation. In his opinion, an individual grower would not have been able to recognize the manipulation that occurred. Finally, appellants referenced the trial testimony of Jack Greer in the *Jackson* case in which Greer stated that he had observed Swift employees estimating the weight of parts rather than weighing them on a scale.

■■ Following two hearings, the trial judge granted appellees' motion for summary judgment. Appellants bring their appeal from that ruling. In summary-judgment cases, we need only decide if the granting of summary judgment was appropriate based upon whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Inge v. Walker*, 70 Ark. App. 114, 15 S.W.3d 348 (2000). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Id*. All proof submitted must be viewed

in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Id.*

█ The statute of limitations for fraud is three years. Ark. Code Ann. § 16-56-105 (1987); *Hampton v. Taylor*, 318 Ark. 771, 887 S.W.2d 535 (1994). The limitation period begins to run, in the absence of concealment of the wrong, when the wrong occurs, not when it is discovered. *Hampton v. Taylor, supra.* Appellants do not argue that appellees engaged in any conduct giving rise to a cause of action for fraud within the three years preceding the filing of the complaint. Rather, they contend that, through March 1992, appellees concealed their fraud, thus tolling the limitations period until November 1996, when appellants learned of appellees' alleged misconduct.

██ A concealed fraud suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence. *SEECO v. Hales*, 341 Ark. 673, 22 S.W.3d 157 (2000). No mere ignorance on the part of the plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the statute bar. *Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895, 935 S.W.2d 258 (1996). There must be some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed or perpetrated in such a way that it conceals itself. *Id.* If the plaintiff, by reasonable diligence, might have detected the fraud he is presumed to have had reasonable knowledge of it. *Id.* Although the question of fraudulent concealment is usually a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, a trial court may resolve fact issues as a matter of law. *Id.*; *Smothers v. Clouette*, 326 Ark. 1017, 934 S.W.2d 923 (1996).

█ The numerous exhibits referenced above show that issues of fact remain on the matter of whether Swift engaged in positive acts of fraud to conceal improper weighing procedures and on the matter of whether appellants exercised due diligence in discovering the existence of these improper procedures. Swift was required by law to prepare true and accurate settlement sheets, *i.e.*, final accountings, for growers at the time of settlement. *See* 9 C.F.R. § 201.100(b) (1994). Such settlement sheets, as shown by a sample abstracted by appellants, contain, among other information, the condemnation weights and the weight of parts. Based upon Jack

Greer's testimony, there is some evidence that Swift did not accurately weigh parts, and thus would have issued inaccurate settlement sheets. Further, Dr. White's affidavit is evidence that Swift may have deliberately manipulated its weight tickets.[2] In *Randles v. Cole*, 68 Ark. App. 7, 2 S.W.3d 90 (1999), we held that a false disclosure form provided to a buyer in a real estate case could be a positive act of fraud sufficient to toll the statute of limitations. Similarly, in this case, the issuance of documents that inaccurately reflected the weight of appellants' product or trailers could be evidence of artifice engaged in by Swift to conceal its improper weighing practices and prevent appellants from learning of their cause of action.

■ As to the question of whether appellants should have discovered their causes of action before November 1996, the trial judge made no express finding on this issue, having already ruled that there was no fraudulent concealment by Swift. However, because we have decided to reverse and remand the grant of summary judgment on the issue of fraudulent concealment, we briefly address the issue of due diligence so that there will be no confusion upon remand. Swift argues that the existence of numerous lawsuits by other growers and the reporting of the lawsuits in the newspaper should have alerted appellants to their cause of action. However, there is nothing in Swift's exhibits to indicate that, as a matter of law, appellants should have been aware of the basis of the allegations made against Swift in the other lawsuits. Further, all appellants except one deny seeing the newspaper articles Swift attached to its motion. When a plaintiff denies knowledge of a newspaper article, it is improper to hold, as a matter of law, that he knew or should have known of the article's contents. *See Hickson v. Saig*, 309 Ark. 231, 828 S.W.2d 840 (1992). Additionally, in order to resolve this issue in favor of appellees, the trial judge would have had to determine that appellants' representations in their affidavits were not credible. Summary judgment is not proper where it is necessary to weigh the credibility of statements to resolve an issue. *See Bennett v. Trout*, 297 Ark. 202, 760 S.W.2d 850 (1988). Swift also argues that appellants could have observed the weighing process at the Swift plant themselves and thus discovered any alleged improprieties. However, a fact question exists as to whether the constant observation of Swift's weighing procedures is the type of diligence that is called for in this situation.

---

[2] Although Swift argues that appellants did not plead in their complaint that the tare weight readings were inaccurate, they did plead that Swift's weighing method was improper and contrary to law.

The final issue we address concerns Swift's argument that any tolling of the statute of limitations due to fraudulent concealment ceased in 1993 when class certification was attempted in the *Jennings* case. It argues that, upon the filing of the class action in *Jennings* on September 3, 1993, appellants, as members of the proposed class, were deemed to be actively pursuing their claim against Swift. We disagree with Swift on this issue. First, we point out that none of the appellants herein were parties to the *Jennings* action, nor is there conclusive evidence that they had actual knowledge of the action. Secondly, we disagree with Swift's interpretation of *Doe v. Blake*, 809 F. Supp. 1020 (D. Conn. 1992), upon which its argument is based. It is true that the court in *Blake* recognized that a class member is deemed to be actively prosecuting his rights during the time class certification is under consideration. However, the *Blake* court was making a general statement and was not concerned with the issue of fraudulent concealment. It would thwart the intent of our law to say that, despite a defendant's fraudulent concealment, a limitations period begins running and continues to run when a class action is filed in which the plaintiff neither joins nor opts out.

Reversed and remanded.

STROUD, C.J., and JENNINGS, ROBBINS, GRIFFEN, NEAL, and VAUGHT, JJ., agree.

CRABTREE, J., concurs in part and dissents in part.

BIRD, J., dissents.

TERRY CRABTREE, Judge, concurring in part; dissenting in part. As the majority recognizes, the type of fraudulent concealment that tolls the statute of limitations must involve some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed or perpetrated in such a way that it conceals itself. *See Chalmers v. Toyota Motor Sales USA, Inc.*, 326 Ark. 895, 935 S.W.2d 258 (1996). Appellants have alleged that Swift's fraudulent concealment took the form of allowing turkeys to sit on the trucks too long, improperly charging for dead-on-arrival turkeys, improperly weighing carcasses and parts, and issuing settlement sheets that reflected these practices. These acts by Swift, however, were not separate, furtively planned devices executed to conceal appellants' cause of action. They were the basis for the underlying fraud claim. Further, the

settlement sheets, even if inaccurate, reflected nothing that appellants could not have discovered by the exercise of reasonable diligence. I therefore dissent from that portion of the majority opinion that holds otherwise.

By contrast, the affidavit of Dr. Leonard White raises the possibility that Swift deliberately misstated the tare weights of the growers' trailers and the likelihood that the growers could not have discovered these misstatements on their own. This is the type of fraudulent concealment that I believe is contemplated by our case law. A genuine issue of material fact therefore remains as to whether the alleged manipulation of tare weights amounts to fraudulent concealment that tolls the statute of limitations and could not have been discovered by the exercise of reasonable diligence. Upon remand, I would limit appellants' proof on fraudulent concealment to this issue.

SAM BIRD, Judge, dissenting. I respectfully dissent from the decision of the majority to reverse the trial court's grant of summary judgment in favor of the appellee because I believe the majority opinion extends the existing precedent far beyond the notion that the fraudulent concealment of a cause of action tolls the statute of limitations. In my opinion, the effect of this court's action is to hold that in the case of the tort of fraud involving concealment, the statute of limitations is tolled from the time of the commission of the fraudulent act until the cause of action is discovered or could have been discovered with reasonable diligence. There is a difference between saying, as the majority does, that when the act of fraud involves concealment, the statute of limitations is tolled, and saying that affirmative actions of concealment of a cause of action in fraud tolls the statute of limitations, which is existing precedent, *O'Mara v. Dykema*, 328 Ark. 310, 942 S.W.2d 854 (1997).

In *O'Mara*, 328 Ark. at 317, 942 S.W.2d at 858, it was stated that "[w]hen there have been affirmative acts of concealment, the statute begins to run *again* at the time the cause is discovered or should have been discovered by reasonable diligence" (*emphasis added*) (*citing Wilson v. General Elec. Capital Auto Lease Inc.*, 311 Ark. 84, 841 S.W.2d 619 (1992)). This language can only be interpreted to mean that the statute of limitations on a cause of action in tort for fraud begins to run when the acts giving rise to the cause of action (*i.e.*, the acts of fraudulent conduct) are completed, that the running of the statute is then tolled when the tortfeasor commits positive acts of fraud to conceal the cause of action, and that the

statute begins *again*, *O'Mara*, *supra*, when the cause of action is, or reasonably could have been, discovered.

The tort of fraud necessarily includes either the false representation of a matter of fact or the concealment of that which should have been disclosed. *Medlock v. Burden*, 321 Ark. 269, 900 S.W.2d 552 (1995). In other words, in the absence of a false representation or concealment, there is no fraud. The affirmative acts of concealment of a fraud required to toll the statute of limitations must be acts of concealment different from the concealment that forms the basis of the cause of action for fraud. The statute of limitations on a cause of action for fraud is not tolled merely because concealment is employed in the perpetration of the fraud. The statute of limitations is not tolled unless, in addition to the concealment that constitutes the cause of action for fraud, there are affirmative actions of concealment, so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed. *Chalmers v. Toyota Motor Sales, USA, Inc.*, 326 Ark. 895, 935 S.W.2d 258 (1996). It is the act of concealing the cause of action that tolls the statute of limitations, not the concealment that gives rise to the cause of action for fraud.

The majority relies upon *SEECO, Inc. v. Hales*, 341 Ark. 673, 22 S.W.3d 157 (2000), which I do not agree supports the majority's position at all. *SEECO* held that "a concealed fraud suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of reasonable diligence." 341 Ark. at 712, 22 S.W.3d at 181. For this proposition, the *SEECO* court cited *Martin v. Arthur*, 339 Ark. 149, 3 S.W.3d 684 (1999), a medical malpractice case in which it was alleged that the defendant doctors were negligent in their use of an artificial ceramic block, Orthoblock, in performing plaintiff's cervical spine fusion, and that the doctors failed to disclose to plaintiff the risk involved in the use of Orthoblock. For their defense, the doctors pled the running of the two-year statute of limitations. The plaintiff countered that by their continued failure to disclose the risk of the use of Orthoblock, the doctors and their clinic fraudulently concealed the plaintiff's cause of action, thereby tolling the statute of limitations. The trial court granted summary judgment in favor of the doctors, holding that the statute of limitations had not been tolled. In affirming the trial court, the supreme court held that the doctors' continued failure to disclose the risks of Orthoblock was nothing more than a "continuation of prior nondisclosure which ... is insufficient to raise a fact question relative to fraudulent concealment," *Martin v. Arthur*, *supra*, 339 Ark. at 155, 3 S.W.3d 687, and that such

continued nondisclosure did not "rise to the level of a positive act of fraud." *Id.*

The majority also relies on *Hampton v. Taylor,* 318 Ark. 771, 887 S.W.2d 535 (1994), for the proposition that the statutory limitation period begins to run, in the absence of concealment of the wrong, when the wrong occurs, not when it is discovered. I have no argument with the majority that *Hampton* is an accurate statement of the law. I do disagree, however, that *Hampton* stands for the proposition that the concealment that forms the basis for the fraud can be the same concealment that is necessary to toll the statute of limitations.

The majority refers to the affidavit of Dr. Leonard White in which White, based on his examination of 5,891 weighing tickets, opined that it would have been difficult for individual growers to have recognized that Swift was manipulating the weighing process. However, what the majority fails to reveal is that White made his discovery as early as 1993 in connection with the *Taylor v. Swift-Eckrich* litigation. Appellants herein offered no explanation why they were unable, with the exercise of reasonable diligence, to discover the same information about which the entire turkey-raising industry in Arkansas was aware. The fact that the discovery of the existence of one's cause of action might be difficult, time-consuming, or expensive does not toll the statute of limitations. As the majority has correctly noted, no mere ignorance on the part of a plaintiff of his rights, nor the mere silence of one who is under no obligation to speak, will prevent the bar of the statute of limitations. It is only when the existence of the cause of action is concealed by some positive act of fraud or that the cause of action is perpetrated in such a way as to conceal itself, that the statute of limitations is tolled, and then only until the plaintiff, with the exercise of reasonable diligence, could have discovered the existence of the cause of action. *O'Mara* v. *Dykema, supra.*

Although the question of fraudulent concealment is normally a question of fact that is not suited for summary judgment, when the evidence leaves no room for a reasonable difference of opinion, the trial court may resolve fact issues as a matter of law. *Alexander v. Flake,* 322 Ark. 239, 910 S.W.2d 190 (1995). In response to appellee's motion for summary judgment, appellants produced no evidence whatsoever of any positive acts committed by the appellee to conceal their alleged fraudulent conduct in the misweighing of turkeys. To toll the statute, appellants rely solely upon the alleged acts of fraud by the appellees that form the basis of their cause of

action. There is neither an allegation by appellants nor evidence in the record that appellees did anything other than misweigh the turkeys and record the inaccurate weights on the weighing tickets. Appellants produced no evidence that appellee did anything to conceal the weighing process, their recordation of the alleged inaccurate results, or the weighing tickets. Nor was their evidence produced that appellees concealed the records of their alleged misdeeds after they were concluded. Under the circumstances, the decision of the trial court to grant appellees' motion for summary judgment was correct, and I would affirm that decision.