Ron MORRIS and Kandi Morris *v.* Ben RUSH,
Jo Anne Rush, and Lyman Lumber Company

CA 01-672                               69 S.W.3d 876

Court of Appeals of Arkansas
Division IV
Opinion delivered January 9, 2002

12

*Henry & Cullen, L.L.P.*, by: *Timothy J. Cullen*, for appellants.

*Quattlebaum, Grooms, Tull & Burrow PLLC*, by: *Patrick W. McAlpine*, for appellees Ben and Jo Anne Rush.

*Frye, Boyce & Lucy, P.A.*, by: *Brian P. Boyce*, for appellee Lyman Lamb Lumber Co.

JOHN B. ROBBINS, Judge. Appellants Ron and Kandi Morris purchased a home from appellees Ben and Jo Anne Rush in August 1996 for $445,000.00. In October 1998, the Morrises filed a complaint against the Rushes, alleging breach of contract, fraud in the inducement to enter into the contract, and breach of implied warranty of fitness for habitation. The complaint specifically alleged that there were numerous problems and

defects with the house, including but not limited to the fact that the foundation is not sufficient to support the house, which has resulted in excessive settling, cracked walls, and uneven floors. In their complaint, the Morrises further alleged that the Rushes were aware of the problems and defects at the time the parties entered into the purchase contract, but failed to disclose them.

The Rushes filed a third-party complaint against appellee Lyman Lamb Lumber Company, alleging that Lyman Lamb Lumber is liable for any damages incurred by the Rushes, as a result of Lyman Lamb Lumber's faulty architectural design. The Rushes subsequently filed a motion for summary judgment, asserting that the contract at issue provided that the Morrises would accept the property "as is" and disclaim any reliance upon any warranties or representations. In their motion, the Rushes alleged that the Morrises relied on their own inspectors, and that the Morrises admitted that they were not aware of any misrepresentations of fact on the part of the Rushes.

The trial court granted the Rushes' motion for summary judgment, and in its order disposed of all claims, including the third-party complaint against Lyman Lamb Lumber. The Morrises now appeal.

The Morrises raise three arguments for reversal. First, they argue that the trial court erred in granting summary judgment because a material issue of fact existed as to whether the Rushes concealed the severe defects regarding the foundation of the house. Next, they assert that the trial court erred because a material issue of fact existed as to whether the "as is" clause applied. Finally, the Morrises contend that the trial court erred in excluding the Rushes as builder-vendors, and that as builder-vendors the Rushes impliedly warranted that the house was fit for habitation. We affirm.

■■ Arkansas Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the burden of sustaining a motion

for summary judgment; once the moving party meets this burden, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Calcagno v. Shelter Mut. Ins. Co.*, 330 Ark. 802, 957 S.W.2d 700 (1997). On appeal, we view the evidence in the light most favorable to the opposing party and resolve all questions and ambiguities against the moving party. *Elder v. Security Bank*, 68 Ark. App. 132, 5 S.W.3d 78 (1999).

The contract between the Rushes and Morrises contained a "Buyers Disclaimer of Reliance," that provided that the buyer inspected or had someone else inspect the property and that the buyer was not relying on any other representations. The contract also provided that the buyer agreed to accept the property "as is," subject to a list of items being in working order.

Prior to closing on the house, the Morrises had two inspections performed. GQ Inspection Service inspected the home, and its inspection report revealed no major problems. Ryan Howard of Engineering Consultants also conducted an inspection to determine the structural integrity of the house, and he indicated in his report that he found evidence of minor settlement in the house, which included cracks above the doors, as well as evidence of potential structural problems.

About nine months after buying the house, the Morrises began to notice cracks in the walls, molding pulling away from the ceiling, and sinking floors. As a result, they hired Edgar Riddick III, an engineer, to inspect their home. In October 1997, Mr. Riddick reported that in his professional opinion the home was not constructed in a way that would be acceptable by normal construction standards. In his report, he stated:

> The floor joist of the home was not properly supported by enough pillars. The pillars that do exist are not properly completed. This has caused the home to settle prematurely and has caused damage to the home. If the "shim" problem is not fixed the structure would continue to settle. This movement would cause further cracking of sheet-rock walls, further deterioration of millwork and doorjambs, etc.

. . . .

> I do believe ·that a trained eye *should have* spotted the "shim" problem under the house.
>
>    . . . .
>
> I do not believe that an untrained eye would have necessarily spotted the potential problems of the "shims." Thus, the Morris family would *not* have any forewarning before purchasing the home. It is my understanding, [that] the cracking and problems in the millwork and crown moldings, noted earlier in the report, were *not* present at the time of sale. These problems occurred within months of the Morris family occupying the home. Mr. and Mrs. Morris tell me that they began to see evidence of this settling shortly after moving in. I believe the previous occupants of the house should have noticed evidence of the settling. There were attempts by someone to paint over some of these defects prior to the Morris' moving in.

In his deposition, Mr. Morris testified that he initially told his wife that he did not think buying the house was "the thing to do." He stated that he had some misgivings about the house, and to reassure himself he obtained inspections from professionals. He stated that, based on the fact that the professionals' reports "checked out," they went forward with the purchase. Mr. Morris testified that, "I relied upon the inspection reports," and that he "thought the inspectors would have more of a trained eye than I would." Mr. Morris did not contend that the Rushes ever lied or told him anything that later turned out to be untrue.

Mrs. Morris also gave a deposition, and she stated that she has a real estate license and brokers' license and was a realtor for a couple of years during the 1990s. She acknowledged that she has a "pretty good understanding" of what is involved in buying and selling a home. However, she testified that because she and her husband are not professionals, they relied on the opinions of the inspector and structural engineer in making the final decision to purchase the house.

Mr. Rush testified that he and his wife built the home and began living in it in December 1994. However, he stated that they did not build the home with the intention of selling it to the public, and that neither he nor his wife is in the construction business. Mr. Rush testified that he never had any conversations with

the Morrises prior to their purchase of the home because his real estate agent handled all of the negotiations. He stated that he made no representations or statements to the Morrises about the quality of the home prior to the purchase date.

The appellants' first point on appeal is that the trial court erred in finding that no material issue of fact existed as to whether the Rushes concealed the severe defects regarding the foundation of the house. The appellants rely on the report of Mr. Riddick, which indicates that the Rushes should have noticed evidence of settling, and that there were attempts by someone to paint over some of the defects prior to the sale. The appellants submit that a significant issue of fact exists as to whether the Rushes intentionally concealed the fact that the house was prematurely settling, which caused severe damage to the house, and that the issue of whether the Rushes fraudulently induced them to enter into the contract is an issue to be decided by a jury.

The elements of a cause of action for fraud were set out in *O'Mara v. Dykema*, 328 Ark. 310, 942 S.W.2d 854 (1997), as follows:

(1) a false representation of a material fact;
(2) knowledge or belief on the part of the person making the representation that the representation is false;
(3) an intent to induce the other party to act or refrain from acting in reliance on the misrepresentation;
(4) a justifiable reliance by the other party; and
(5) resulting damages.

*Id.* at 316, 942 S.W.2d at 857 (citation omitted). Representations are considered fraudulent when the one making them either knows them to be false or, not knowing, asserts them to be true. *O'Mara v. Dykema, supra.* A grant of summary judgment on a claim of misrepresentation is appropriate when a plaintiff does not produce specific facts that the defendant knew his representations were false. *Rosser v. Columbia Mut. Ins. Co.*, 55 Ark. App. 77, 928 S.W.2d 813 (1996).

We hold that, in the instant case, the trial court did not err in ruling as a matter of law that the Rushes did not fraudulently induce the Morrises. In their depositions, neither Mr.

Morris nor Mrs. Morris alleged that the Rushes made any false representations. Furthermore, the contract and the Morrises' depositions demonstrate that they were relying on their own professional inspectors, and not any representation by the Rushes. The report of Ryan Howard indicated both interior and exterior cracking that appeared to be caused by minor settling. Thus, even if the Rushes attempted to conceal signs of settlement, the Morrises had notice of the cracking and evidence of settlement before the contract became final. On the undisputed facts, the Morrises were not fraudulently induced by the Rushes to enter into the contract of sale.

The appellants next argue that the trial court erred in concluding that no material fact existed as to whether the "as is" contract clause applied to this case. That clause provides:

> Buyer agrees to accept the Property "as is," in its present condition, provided that the following items shall be in normal working order at closing: electrical, plumbing and septic systems, heating and air systems, dishwashers, disposals, trash compactors, ranges, exhaust and ceiling fans, water heaters, garage door openers, remote controls and any and all components and all improvements, structures and components thereof, on or about the property (collectively the "Inspection Items").

The report prepared by Mr. Riddick indicated that the problem with the foundation was that the floor was not supported by enough pillars, and that the pillars that existed were not properly completed. The appellants assert that these pillars constitute an "improvement, structure, and component" of the house under the terms of the "as is" clause, and that due to the general collapsing of the home soon after they moved in there is a material issue as to whether the foundation and pillars were in "normal working order at closing."

■ The trial court did not err in ruling, as a matter of law, that the "as is" clause was of no avail to the appellants' action. The clause is unambiguous and susceptible to only one logical interpretation. The "as is" exceptions do not include, as appellants suggest, problems with the pillars and foundation. Clearly, the phrase "improvements, structures, and components thereof" relates only to the individual inspection items, and not to the

house itself. Otherwise the "as is" clause would be completely swallowed up by the exceptions. Therefore, the issue of whether the pillars and foundation were in "normal working order at closing" is immaterial.

The appellants' remaining argument is that the trial court erroneously excluded the Rushes as builder-vendors. They assert that the Rushes were builder-vendors because Mr. Rush was the general contractor for the house, and they sold it shortly after it was built. Appellants cite *Wawak v. Stewart*, 247 Ark. 1093, 449 S.W.2d 922 (1970), for the proposition that when a person who sells a house was also the builder, and that person sells the new house to its first intended occupant, he impliedly warrants that the foundations are secure and firm and that the house is safe for the buyer to live in. In that case, our supreme court quoted *House v. Thornton*, 457 P.2d 199, 76 Wash.2d 428 (1969), as follows:

> As between vendor and purchaser, the builder-vendors, even though exercising reasonable care to construct a sound building, had by far the better opportunity to examine the stability of the site and to determine the kind of foundation to install. Although hindsight, it is frequently said, is 20-20 and defendants used reasonable prudence in selecting the site and designing and constructing the building, their position throughout the process of selection, planning and construction was markedly superior to that of their first purchaser-occupant. To borrow an idea from equity, of the innocent parties who suffered, it was the builder-vendor who made the harm possible. If there is a comparative standard of innocence, as well as of culpability, the defendants who built and sold the house were less innocent and more culpable than the wholly innocent and unsuspecting buyer. Thus, the old rule of caveat emptor has little relevance to the sale of a brand-new house by a vendor-builder to a first buyer for purposes of occupancy.

*Wawak v. Stewart*, 247 Ark. at 1097, 449 S.W.2d at 924. The appellants argue that, while they did not buy a brand-new house, liability should still be on the Rushes because of their opportunity to examine the stability of the site and determine the kind of foundation that was necessary.

■ ■ The instant case is clearly distinguishable from *Wawak v. Stewart, supra,* because in that case the appellant was a professional house builder and built the house at issue in the course of his business. It is undisputed that the Rushes, on the other hand, are not professional builders. The appellants have cited no cases, and we know of none, which hold that an individual who builds his own house, lives in it, and later sells it, qualifies as a builder-vendor. For this reason alone appellants' final argument fails. Moreover, their argument would fail even if the Rushes had been builder-vendors because an implied warranty of habitability is waived when the buyer purchases the property "as is." *See O'Mara v. Dykema, supra.*

■ We hold that the trial court committed no error in finding that there were no genuine issues of material fact and the appellees were entitled to judgment as a matter of law. Therefore, we affirm the trial court's order granting summary judgment.

Affirmed.

GRIFFEN and ROAF, JJ., agree.