# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3825

_____

| | | |
|---|---|---|
| Receivables Purchasing<br>Company, Inc., | * | |
| | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Engineering and Professional | * | |
| Services, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: September 28, 2007
Filed: January 4, 2008

_____

Before COLLOTON, ARNOLD, and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

Receivables Purchasing Company, Inc., sued Engineering and Professional Services, Inc., (EPS) for fraud and tortious interference with contract. The district court granted summary judgment in favor of EPS on both counts. We affirm the district court's judgment on the tortious interference claim but reverse and remand for further proceedings on the fraud claim.

## I.

EPS was the general contractor on a construction project for which RJS Utility Construction, Inc., (RJS) was a subcontractor. Receivables bought the rights to certain invoices that RJS sent EPS for work that RJS asserted that it had performed. Receivables produced evidence that before it bought each invoice it had called EPS's project manager, Richard D. Getts, Jr., to confirm that the work had been completed and that EPS had approved the invoice for payment. Receivables also adduced proof that during each of these conversations, Mr. Getts stated that the invoice had been approved for payment. EPS eventually refused to pay four of the invoices according to the terms of its original contract with RJS because of problems with the work that RJS performed. EPS also entered into an arrangement with RJS whereby EPS would receive a five-percent discount on future invoices that it paid directly to RJS within a certain time. Receivables filed suit against EPS, claiming that the discount arrangement tortiously interfered with contracts between Receivables and RJS and that Mr. Getts's representations were fraudulent.

## II.

We conclude, first, that the district court properly granted summary judgment on the tortious interference claim. Under Arkansas law, which both parties agree applies in this diversity case, a person who brings a tortious inference claim must, in order to prevail, allege and prove that the defendant intentionally and improperly interfered with a valid contractual relationship or a business expectancy. *See Stewart Title Guar. Co. v. American Abstract & Title Co.*, 215 S.W.3d 596, 601, 363 Ark. 530, 540 (Ark. 2005); Restatement (Second) of Torts § 766B; *see also McNeill v. Security Benefit Life Ins. Co.*, 28 F.3d 891, 894-95 (8th Cir. 1994). In its complaint, Receivables alleged that "there were lawful and enforceable contracts between Receivables and RJS" and that "EPS intentionally interfered with said contracts." Receivables thus alleged that EPS interfered with its contracts but not with a general business expectancy.

We have carefully examined the relevant papers in this case and cannot discern any contract with which EPS could have interfered. On appeal, Receivables argues that EPS's conduct caused RJS to stop assigning invoices to the plaintiff. It is true that Receivables had bought a number of invoices from RJS over a period of time, but nothing in the record indicates that RJS had assigned future invoices, that RJS had agreed to make any such assignments, or that the practice of assigning those invoices had evolved into an agreement that assignments would continue into the future. In other words, RJS was not obligated to continue the arrangement; so far as the evidence goes, it appears that RJS was free to abandon factoring the invoices to Receivables at any time. That being so, the tortious interference claim must fail for lack of an agreement that would support an action.

## III.

We turn now to the fraud claim. The district court granted summary judgment, stating initially that a plaintiff in a fraud claim must prove that the defendant "knew or should have known that the representation was false." It then set out a different standard, saying that Receivables was required to "set forth evidence showing that Getts knew the representations he was making to Plaintiff were false." Finally, the court, returning to its earlier standard, concluded that "no evidence creates a genuine issue of material fact regarding whether Getts, at the time he represented to Plaintiff that the invoices would be paid, knew or should have known that the invoices were not going to be paid." After reviewing the Arkansas cases, we have concluded that a somewhat different standard from either of these applies here.

In *Bomar v. Moser*, 369 Ark. 123, 131 (2007), the Supreme Court of Arkansas held that a cause of action for fraud consists of five elements. The *Bomar* court described the three elements at issue in this case as follows: "knowledge that the representation is false or that there is insufficient evidence upon which to make the representation" (the scienter element), "intent to induce action or inaction in reliance

upon the representation," and "justifiable reliance on the representation." *Id.*; *see also Delanno, Inc. v. Peace*, 366 Ark. 542, 545 (2006).

Though the simple and clear definition of scienter laid out in *Bomar* has been frequently repeated in the Arkansas case law, it has, at least in recent times, often been coupled with an inconsistent idea. The Arkansas Supreme Court appears to have begun this trend in 1997: After stating that "[r]epresentations are considered fraudulent when the one making them either knows them to be false or, not knowing, asserts them to be true," it immediately added that a "grant of summary judgment on a claim of misrepresentation is appropriate when a plaintiff does not produce specific facts that the defendant knew his representations were false." *O'Mara v. Dykema*, 942 S.W.2d 854, 858, 328 Ark. 310, 317 (1997) (internal citation omitted). The Arkansas courts have continued to repeat these inconsistent standards side by side. *See, e.g., Morris v. Rush*, 69 S.W.3d 876, 880, 77 Ark. App. 11, 17 (2002). The standards are incompatible because these cases say first that a defendant does not need to be aware that his representations were false and then say that he does.

The Arkansas law regarding negligent misrepresentation provides us with some guidance in determining which of these competing principles the Arkansas Supreme Court would likely adopt. Unlike some jurisdictions, *see, e.g., Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990), Arkansas has refused to recognize the common-law tort of negligent misrepresentation, *South County, Inc. v. First Western Loan Co.*, 871 S.W.2d 325, 326, 315 Ark. 722, 726 (1994). The primary difference between the tort of fraud and the tort of negligent misrepresentation is that the latter does not require scienter: Fraud is an intentional tort, which requires scienter, but negligent misrepresentation is an unintentional tort, which does not. Thus, a defendant will be liable for negligent misrepresentation when he "fails to exercise reasonable care or competence in obtaining or communicating the information." Restatement (Second) of Torts § 552(1). The question in a negligent misrepresentation claim is merely

whether the defendant "should have known" that the representation was false, regardless of what the defendant actually knew.

While there are various logical bases for the Arkansas Supreme Court's decision that liability does not attach to negligent misrepresentations, we think it unlikely that that court would reject liability for knowingly ignorant misrepresentations. Knowingly false misrepresentations and knowingly ignorant misrepresentations are both acts to which the common law normally attaches liability, *see* Restatement (Second) of Torts § 526, and the older Arkansas cases were clear that liability attached to both. *See e.g. Fausett & Co. v. Bullard*, 229 S.W.2d 490, 491, 217 Ark. 176, 178-79 (1950); *Laney-Payne Farm Loan Co. v. Greenhaw*, 9 S.W.2d 19, 20-21, 177 Ark. 589 (1928). Making a representation without knowing that it is true may not be as blameworthy as making a representation knowing that it is false, but a defendant is morally culpable in both instances. It would therefore be odd if the Arkansas Supreme Court rejected liability for all misrepresentations where the defendant didn't have full knowledge that he or she was asserting an untruth. Though in certain cases the Arkansas Supreme Court could find such liability under the aegis of what it calls constructive fraud, *see Knight v. Day*, 36 S.W.3d 300, 303, 343 Ark. 402, 405 (2001), constructive fraud has such a limited reach that there would still be a gap in Arkansas law. Victims of damaging and intentional misrepresentations would be without a remedy in circumstances in which other jurisdictions would sustain a claim. *See* Restatement (Second) of Torts § 526.

We therefore believe that the Arkansas Supreme Court would hold that liability for fraud attaches in cases where a defendant lacked knowledge that his or her representation was false but did not know whether it was true or not. The district court's statement that Receivables had to show that Mr. Getts knew that the representation was false is thus incorrect, and its reference to the "should-have-known" standard for the scienter requirement was inappropriate in this case because that standard would relate only to a claim for negligent misrepresentation. Applying

the correct principle, we hold, for reasons that follow, that a genuine issue of material fact exists as to whether Mr. Getts had the requisite scienter when he made the representation that Receivables asserts he made.

EPS has made much of the fact that Ralph Lewis, the president of Receivables, admitted that he was unsure of what Mr. Getts knew when he (Mr. Getts) made the representations that Mr. Lewis attributed to him. When asked if he was contending that Mr. Getts knew that his representations were false, Mr. Lewis replied, "I can't answer that. I don't know what his thoughts were." Mr. Lewis's position on Mr. Getts's state of mind was made clear later in the deposition when he was questioned along the same lines and said, "Mr. Getz [sic] should have known. He was the superintendent on the job." Brent Lewis, Receivables's other principal officer, made similar statements in his deposition. By itself, this testimony would tend to make out a claim only for negligent misrepresentation, which, as we have said, is not recognized in Arkansas.

But "it is not necessary that fraud be shown by direct evidence or positive testimony. Circumstantial evidence can provide a basis for the jury to infer fraud where … the circumstances are inconsistent with honest intent." *Stine v. Sanders*, 987 S.W.2d 289, 293 n.3, 66 Ark. App. 49, 55 n.3 (1999) (citing *Pacini v. Haven*, 105 S.W.2d 85, 194 Ark. 31 (1937)). Receivables produced proof that Mr. Getts had a motive to induce Receivables to purchase the invoices: Mr. Getts admitted in a deposition that he knew that RJS was dependent on Receivables's financing to continue working. Furthermore, when asked in the same deposition, "When you signed off on the invoices why didn't you put that [the work] was accomplished rather than approved?", Mr. Getts stated that he was signing the invoices as "approved" solely for the benefit of RJS so that it could continue to receive financing and that he did not consider the distinction posited. Given Mr. Getts's position as project manager responsible for the RJS work, this evidence gives rise to a reasonable inference that

he was at least unaware of whether his representations that the invoices were, in fact, approved and would be paid were true or false.

EPS also maintains that Receivables has failed to create a genuine issue of material fact as to whether EPS intended to induce reliance and whether Receivables's reliance was justified. We need address these points only briefly. As for the first, the motive that Mr. Getts had to induce Receivables to purchase the invoices is by itself sufficient to create a genuine issue of material fact as to whether EPS intended to induce reliance. Regarding the second, the *prima facie* reasonableness of relying on the representations of a project manager that his company would pay for work represented by a particular invoice is at least sufficient to create a genuine issue of material fact as to whether Receivables's reliance was justified. Genuine issues of material fact thus exist on the fraud claim.

## IV.

Accordingly, we affirm the district court's entry of summary judgment for EPS on the tortious interference claim, and we reverse the judgment for EPS on the fraud claim and remand for further proceedings on that claim.

_____